```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :
                                      :
IN RE REFCO SECURITIES LITIGATION     :    07 MDL 1902 (JSR)
                                      :
                                      :
------------------------------------- x
------------------------------------- x
KENNETH M. KRYS, et al.,              :
                                      :
          Plaintiffs,                 :
                                      :    08 Civ. 3065 (JSR)
          -v-                         :    08 Civ. 3086 (JSR)
                                      :
CHRISTOPHER SUGRUE, et al.,           :
                                      :
          Defendants.                 :
------------------------------------- x
KENNETH M. KRYS, et al.,              :
                                      :
          Plaintiffs,                 :
                                      :    08 Civ. 7416 (JSR)
          -v-                         :
                                      :
ROBERT AARON, et al.,                 :
                                      :
          Defendants.                 :
------------------------------------- x
KENNETH M. KRYS, et al.,              :
                                      :
          Plaintiffs,                 :
                                      :    08 Civ. 8267 (JSR)
          -v-                         :
                                      :
RICHARD BUTT,                         :
                                      :
          Defendant.                  :
------------------------------------- x
```

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

The Court and the parties in In re Refco Securities Litigation have hugely benefitted from the extraordinary services rendered by the Special Masters, Professor Daniel Capra of Fordham Law School and former United States Magistrate Judge Ronald Hedges. It is rare that this Court has found itself in disagreement with their procedural rulings or substantive recommendations. Still, when a substantive recommendation comes to this Court, it is the obligation of the Court to review such recommendation de novo, see Case Management Order # 3 (item number 459 under 07 MDL 1902). Professor Capra's Report and Recommendation of December 6, 2010 recommends that the Court dismiss with prejudice various claims in the above-captioned cases on the ground that, on the face of the pleadings, the claims are barred by the so-called "in pari delicto" and "Wagoner" doctrines. The Court, however, after careful consideration, concludes that the pleadings, taken most favorably to the plaintiffs, avoid both bars.[1]

---

[1] Both doctrines are variations of the hoary principle of equity jurisprudence that one who seeks relief must have clean hands, i.e., must not himself have contributed to the wrongdoing for which relief is sought. The doctrine of in pari delicto (literally, "in equal fault") embraces a comparable principle in the context of a suit for damages. Under New York law (which substantively governs the claims here at issue), in pari delicto is an affirmative defense as to which a defendant bears the burden of proof. See Kirschner v. KPMG LLP ("Kirschner III"), 15 N.Y.3d 446, 459 n.3 (N.Y. 2010) ("in New York, in pari delicto is an affirmative defense"). By contrast, the gloss on New York's in pari delicto doctrine enunciated by the Second Circuit in Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991) "is a prudential limitation on standing under federal law." Kirschner III at 459 n.3. Nonetheless, "in pari delicto may be

2

The allegations at the heart of the instant complaints are that Refco Group, Ltd. and its affiliates, under the direction of its President and CEO Phillip Bennett, corruptly induced three directors of PlusFunds Group, Inc. (which was the investment manager for the SPhinX family of hedge funds) - namely, Christopher Sugrue, Mark Kavanagh, and Brian Owens (hereinafter, the "Miscreants") - to arrange for monies of SPhinX Managed Futures Fund ("SMFF") that had been held in protected, customer-segregated accounts at Refco LLC, a regulated entity, to be transferred into unprotected, unsegregated accounts at Refco Capital Markets, Ltd. ("RCM"), an unregulated entity, where the monies could be misappropriated by Bennett and his accomplices for their own illegal purposes. Amended Complaint, ¶¶ 1-9.[2] The corrupt inducement took the form of Refco's disguised purchase of the PlusFunds shares owned by Sugrue, Kavanagh, and Owens. Id. at ¶ 9.

---

resolved on the pleadings in a State court action in an appropriate case," id., and the same is true in a federal action. Thus, for purposes of the instant motions to dismiss, there is no practical difference between the two doctrines, for both seek to test whether, on the face of the pleadings, there is wrongdoing imputed to the plaintiffs that prevents them from pursuing their claims.

[2] "Amended Complaint" refers to the Amended Complaint in Krys v. Sugrue, 08 Civ. 3065, 08 Civ. 3086. The amended complaints in the other two actions here in issue, Krys v. Aaron, 08 Civ. 7416; and Krys v. Butt, 08 Civ. 8267, are functionally equivalent to the Amended Complaint in Krys v. Sugrue insofar as the allegations relevant to the in pari delicto issue are concerned. Accordingly, following the approach adopted by the Special Master in the December 6, 2010 Report and Recommendation, the Court focuses on the allegations set forth in the Krys v. Sugrue Amended Complaint.

Since the three Miscreants were directors of PlusFunds at the time of their alleged misconduct, their misconduct would ordinarily be imputed, as a matter of agency law, to PlusFunds and to its principal, SPhinX, the parties on behalf of which Kenneth M. Krys, as trustee, brings these actions. As a result, the plaintiffs' claims would be barred by the in pari delicto and Wagoner doctrines. But, even as a principal is not bound if his agent acts ultra vires, so too the instant actions would not be barred if the acts of the Miscreants in arranging for the transfer of the funds into unprotected accounts fell within what is called the "adverse interest exception" to imputation. Kirschner III at 952. "To come within the exception, the agent must have totally abandoned his principal's interest and be acting entirely for his own or another's purposes." Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784-85 (N.Y. 1985). But this "most narrow of exceptions" only applies "where the insider's misconduct benefits only himself or a third party; i.e., where the fraud is committed against a corporation rather than on its behalf." Kirschner III at 952.

The summary allegations of the Amended Complaint allege precisely what the adverse interest exception requires. See, e.g., Amended Complaint ¶ 5: "These agents/fiduciaries acted entirely adversely to the interests of SPhinX and PlusFunds and in violation of the explicit requirement that SPhinX's assets must be protected in customer-segregated accounts. In fact, these agent/fiduciary wrongdoers acted for their own exclusive interests." The Special

4

Master, however, reads various allegations of the Amended Complaint as belying these assertions and alleging, instead, that SPhinX and PlusFunds received some short-term benefits from the corrupt transfers. Reading the Amended Complaint most favorably to plaintiffs, however, the Court finds itself in disagreement with the Special Master's interpretation.

First, the Special Master contends that SPhinX and PlusFunds received a benefit in the form of interest payments from the cash held in unsegregated accounts at RCM. But the complaint in Krys v. Sugrue does not allege that such interest payments benefitted SPhinX and PlusFunds; to the contrary, it alleges that these entities "did not benefit in any way from the movement of SMFF's excess cash to RCM." Amended Complaint ¶ 197. Indeed, the Complaint alleges, with specificity, that for the first year after the transfers (in December 2002), the SMFF cash held at RCM yielded no interest income whatsoever, and that thereafter it yielded less than could have been earned even in 90-day treasury bills. Id. ¶¶ 197-98. Moreover, in a companion complaint that is part of this overall litigation (and that the Court can, in any event, take notice of in light of plaintiffs' request for leave to further amend their complaints), plaintiffs clearly allege that the interest earned from the unsegregated accounts

at RCM was in fact <u>less</u> than that earned from the segregated accounts at Refco LLC.[3]

Thus, the pleadings, read most favorably to plaintiffs, allege that the cash transfers were in fact <u>detrimental</u> to SPhinX/PlusFunds in terms of interest payments. Although the Special Master argues that, under <u>Kirschner III</u>, SMFF's receipt from the RCM accounts of any interest payment at all is enough to negate the "adverse interest" exception, <u>see</u> Report and Recommendation at 23-24, the Court disagrees with this construction of <u>Kirschner III</u>. The Miscreants' corruptly-induced transfer of SMFF monies from funds earning a higher rate of interest into funds earning a lower rate of interest was no different from taking money out of the SMFF customers' pockets and putting it in the pockets of Bennett and his accomplices – the functional equivalent of the "theft or looting or embezzlement" that, under <u>Kirschner III</u>, is the classic example of the adverse interest exception. <u>See</u> <u>Kirschner III</u> at 952 ("This rule avoids ambiguity where there is a benefit to both the insider and the corporation, and reserves this most narrow of exceptions for those cases -- outright theft or looting

---

[3] <u>See</u> <u>Krys v. Deutsche Bank Securities, Inc.</u>, 10 Civ. 3594 (JSR), Compl. ¶ 153 ("Refco LLC typically paid 90% of the two-year Treasury Bill rate, which was typically higher than the 90-day Treasury Bill rate paid by RCM to customers that had at least $10,000 excess cash in segregated accounts. Thus, for instance, on September 30, 2005, the interest rate on SMFF's non-segregated cash held at RCM was 3.184%, and the interest rate on SMFF's customer-segregated cash at Refco LLC was 3.595%. As a result, there was no benefit to SMFF at any time from having its excess cash swept to RCM.").

or embezzlement -- where the insider's misconduct benefits only himself or a third party; i.e., where the fraud is committed against a corporation rather than on its behalf."). See also Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784 (N.Y. 198) ("This exception provides that when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose.") (citations omitted). Indeed, a very common kind of corporate embezzlement occurs when an employee secretly "skims off the top" a portion of monies received from customers; but under the Special Master's interpretation of Kirschner III, the company would be barred from suing the errant employee, because some of the monies still made it to the company coffers. That is not the law of New York, or any other sensible jurisdiction.

Second, the Special Master reads the complaints as suggesting that, interest payments aside, SPhinX and PlusFunds received a number of additional benefits from their association with Refco, such as $70 million in "seed" capital and a $25 credit facility, as well as help in obtaining investors for the SPhinX funds. See Report and Recommendation at 24. But these supposed benefits (which the Amended Complaint does not characterize as such) grew out of the general relationship between Refco and SPhinX/PlusFunds and had nothing to do

with the corruptly-procured transfers that are the gravamen of the instant claims. Although the defendants in their submissions to this Court cite to certain paragraphs of the Amended Complaint that, they allege, evidence a causal connection between the cash transfers and the foregoing "benefits," e.g., Amended Complaint ¶¶ 144, 150, 193, 199, in fact those paragraphs, when read most favorably to plaintiffs, at most suggest that the connection, if any, between these benefits and the customers' funds was with the placement of these funds in the customer-segregated accounts at Refco, and not in the subsequent diversion of these funds into the unsegregated accounts at RCM. Thus, for example, the efforts made by Refco to steer customers to SPhinX were in the context of the assurances given by SphinX/PlusFunds that the customers' monies would be kept in protected, customer-segregated accounts. See Amended Complaint ¶ 150.

More generally, the attempts by defendants to find somewhere in the 300-page Amended Complaint a snippet or two that suggests that SPhinX/Plus Funds somehow received some tangentially-related benefit from the illicit transfers that are the heart of the instant claims is utterly inconsistent with the fundamental principle that, on a motion to dismiss, a complaint must be read most favorably to the plaintiffs. A motion to dismiss is not designed to be a game of "gotcha," that ignores the clear thrust of hundreds of pages of specific allegations in favor of a line or two here or there that is arguably inconsistent with that thrust.

It must be noted, however, that the Court only disagrees with those conclusions in the December 6, 2010 Report and Recommendation that related to the rejection of the adverse interest exception and otherwise agrees with the Special Master's findings and recommendations. For example, the Court agrees with the Special Master's recommendation that "if the Court finds the Plaintiffs have adequately pleaded the adverse interest exception" -- as the Court now does so find -- "it should also find that the Plaintiffs have adequately alleged the existence of innocent insiders that would have stopped the wrongdoing had they known about it" -- as the Court also now so finds. See Report and Recommendation at 27.

In short, while the Court concludes that, contrary to the Special Master's interpretation, plaintiffs have adequately pleaded the adverse interest exception, the Court in all other respects adopts the findings and conclusions of the December 6, 2010 Report and Recommendation to the extent they are not inconsistent with the Court's determination regarding the adverse interest exception. The matter is remanded to the Special Masters for further proceedings consistent with this Opinion and Order and with the prior orders of the Court.

SO ORDERED.

Dated: New York, NY
April 25, 2011

_____
JED S. RAKOFF, U.S.D.J.