**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                        :
In re REFCO INC. SECURITIES LITIGATION  :      Case No. 07-md-1902 (JSR)
                                        :
------------------------------------------------------------X

This Document Relates to:


------------------------------------------------------------X
                                        :
KENNETH M. KRYS, et al.,                :      Case No. 08-cv-7416 (JSR)
                                        :
Plaintiffs,            :
                                        :        REPORT AND
        -against-                       :        RECOMMENDATION
                                        :      OF THE SPECIAL MASTER
ROBERT AARON, et al.,                   :       ON PLAINTIFFS' MOTION TO
                                        :        DISMISS INDEMNITY
                Defendants.             :      COUNTERCLAIM
------------------------------------------------------------X

Daniel J. Capra, Special Master

## I. Introduction

        The Plaintiffs[1] in this action move to dismiss Count II of a counterclaim under which DPM[2]
seeks 1) indemnity for legal expenses incurred in this litigation related to claims for damages to

---

        [1] The Plaintiffs are Joint Official Liquidators of the SPhinX family of Funds and the
SPhinX Trust. The SPhinX Trust is the assignee of claims from the Estate of PlusFunds.
PlusFunds created SPhinX and served as its investment manager.

        While of course the "plaintiffs" are not plaintiffs on the counterclaim, this R and R will
refer to the JOLs as either "plaintiffs" or the "JOLs" throughout this opinion, in order to
maintain consistency with the many preceding R and Rs. .

        [2] DPM is defined herein as Derivatives Portfolio Management, LLC, Derivatives
Portfolio Management, Ltd., DPM-Mellon, LLC, and DPM-Mellon, LTD.  DPM is sometimes
referred to herein as the "DPM Entities" when necessary to distinguish them from Robert Aaron,
Guy Castranova, and Mellon Bank, all of whom are named defendants in *Krys v. Aaron.*

SPhinX Managed Futures Fund ("SMFF") [3]; 2) indemnity for legal expenses incurred in the underlying litigation related to claims for damages to PlusFunds Group, Inc. ("PlusFunds"); 3) indemnity for legal expenses incurred in the Cayman Islands proceeding involving liquidation of the SPhinX Funds; and 4) indemnity from any award of judgment "for any and all damages assessed against [DPM] in this action and/or in the Cayman Islands proceedings." Counterclaim ¶21. All of these claims are based on an indemnity provision in Service Agreements entered into between SPhinX and DPM.[4]

The Special Master has written many R and Rs reviewing claims arising from the implosion of Refco. Familiarity with the prior R and Rs is assumed. In particular, the "DPM R and R" — dated July 19, 2010 and affirmed and adopted by Judge Rakoff — sets forth the substantive claims between the parties and the disposition of the motions to dismiss brought by the defendants in this matter.

*For the reasons discussed below, the Special Master recommends that the motion to dismiss Count II of the Counterclaim should be granted in part and denied in part.*[5]

### A. The DPM R and R

In brief, the DPM R and R made the following recommendations, all of which were adopted by Judge Rakoff:

● Count I, for Breach of Contract, was dismissed as to Robert Aaron and Guy Castranova, with prejudice;[6] and the claim that Mellon Bank ("Mellon") was liable for breaching the Service Agreement was dismissed with prejudice.

● Count II, Breach of the Covenant of Good Faith and Fair Dealing, was dismissed with prejudice.

● Count III is a claim for indemnity in which the Plaintiffs invoke the same Paragraph in the

---

[3] Abbreviations in prior R and Rs are used herein.

[4] As discussed below, there were several Service Agreements entered into yearly by the parties, but all the Agreements at issue here had identical indemnity provisions.

[5] The disposition of Count I of the Counterclaim is discussed below.

[6] Robert Aaron was a director of SPhinX from 2002 to 2006 and was the founder, Chief Executive Officer, part owner and member of the board of directors of DPM "at all times relevant." First Amended Complaint ¶38. Guy Castranova was President, Chief Operating Officer, part-owner and member of the board of directors of DPM "at all times relevant." Id. at ¶39. Aaron and Castranova are not parties to the indemnity counterclaim that is the subject of this R and R.

Service Agreements that DPM relies upon here. The DPM Entities did not move to dismiss this claim; Mellon did, and the claim was dismissed with prejudice as to Mellon because it was not a signatory to the Service Agreements.

● Count IV, Declaratory Relief: In this Count the Plaintiffs sought a declaration that the DPM Entities, and Aaron and Castranova, were not entitled to indemnity. DPM and Aaron did not move to dismiss, but Castranova did on the ground that he was not seeking indemnity. Count IV was dismissed as to Castronova, with prejudice, along with a ruling that because of his disclaimer of any right to seek indemnity, he would be estopped from making such a claim at a later date. Essentially the issues that the Plaintiffs sought to raise by motion for declaratory relief are being addressed in this R and R given DPM's claim for indemnity.[7]

● Count V, Breach of Fiduciary Duty: The DPM Entities' motion to dismiss was denied; PlusFunds' claim against Aaron was dismissed with prejudice; Aaron's motion to dismiss SMFF's claim was denied; the claims in this Count against Castranova were dismissed with prejudice; the Claims in this Count against Mellon were dismissed with prejudice.

● Count VI, Aiding and Abetting Breach of Fiduciary Duty: The motions to dismiss were denied with respect to all Defendants except Mellon.

● Count VII, Interference with Contract/Prospective Contract: This Count was dismissed with prejudice.

● Count VIII, Fraud/Misrepresentation: The motions to dismiss were denied with respect to all Defendants except Mellon.

● Count IX, Aiding and Abetting Interference with Contract/Prospective Contract: This Count was dismissed with prejudice.

● Count X, NJRICO: This Count was dismissed with prejudice.

## B. Count I of the Counterclaim.

Count I of the DPM Counterclaim was a claim for contribution against the Plaintiffs. Count II is the claim for indemnity. The JOLs took the position that Count I was procedurally defective because there is no such thing as a counterclaim for contribution — as contribution by definition involves a claim against a third party. At the oral argument on the motion to dismiss the Counterclaim in its entirety, JOLs' counsel conceded that the substantive issues raised by the DPM Defendants in Count I could be raised as an affirmative defense. The Special Master suggested that

---

[7] As indicated above, Castranova is *not* a party to this indemnity counterclaim. Nor could he be, given his averments in his motion to dismiss the Plaintiffs' claim for declaratory relief.

instead of expending resources in determining the nice issue of whether a claim for contribution can be brought as a counterclaim,  the parties should meet and confer with the goal of dismissing the counterclaim without prejudice and including  DPM's  claim for contribution as an affirmative defense. Subsequently, DPM  filed a notice of  dismissal of Count I of the Counterclaim against the JOLs. Accordingly, this R and R does not consider Count I of the Counterclaim. This R and R focuses solely on Count II of the Counterclaim, for indemnity.

### C. The Cayman Liquidation Proceedings

The JOLs assert that dismissal of DPM's indemnity claim "will promote important interests of the SPhinX funds and their investors and creditors in the Cayman Islands." Opening Brief at 1. According to the JOLs, the SPhinX liquidation proceedings are being delayed by the Cayman court's establishment of a substantial reserve for indemnification claims — they contend that the reserve has "prevented the JOLs from distributing assets of the estate to innocent investors and creditors, who have been waiting over five years to receive their assets from the estate." Id. at 2.

All that may be true, but it is irrelevant to any determination of the counterclaim for indemnity. If DPM has stated a plausible claim for relief, it can't matter that the claim will hold up the liquidation in the Caymans. It can't be that a valid claim for relief must be dismissed because of its impact on other proceedings.  The Plaintiffs cite no case law in support of such a radical proposition.[8]

The only relevance of the Cayman proceedings to this motion to dismiss is that DPM is seeking indemnity for legal expenses incurred in those proceedings, as well as indemnity from any damages assessed against it by the Cayman court. Those claims are discussed in Part VI below.

### D. The Indemnity Provision in the Service Agreements

 On July 9, 2002, May 1, 2003, June 3, 2004, and February 28, 2006, DPM and SPhinX entered into Service Agreements through which DPM agreed to provide financial services to the Portfolio Funds of SPhinX, including SMFF.[9]  There are two clauses in the Service Agreements that

---

[8] It should be noted that DPM is not the only party with indemnification claims that may have an effect on the Cayman proceedings. See Letter to Special Master from Counsel for Owens and Kavanaugh dated October 11, 2011.

[9] Declaration of Mason Simpson, Ex. A. The JOLs allege that the 2006 Service Agreement is unenforceable. First Amended Complaint at ¶121. That allegation has no direct bearing on this motion, because the prior Service Agreements all state that the indemnification

have some bearing on DPM's claims for indemnity.  The most important, of course, is the indemnity provision itself. Paragraph 18 of the Service Agreement — identical in each of the Agreements — provides in pertinent part as follows:

> **18. Indemnification.** DPM and DPM Ltd.  agree to indemnify and hold harmless the Companies [as relevant here, SMFF] from and against any and all liabilities, claims, costs, fines, damages, expenses, losses and attorneys' fees arising out of or in connection with any failure of DPM and DPM Ltd. to perform their obligations hereunder. The Companies agree to indemnify . . .  and hold harmless DPM and DPM Ltd. and their respective officers and employees and their respective successors and permitted assigns from and against any and all liabilities, claims, costs, fines, damages, expenses or losses incurred by DPM or DPM Ltd in consequence of the performance of their obligations under this Agreement. Nothing contained herein shall require either party to indemnify the other for acts of the others, which constitute gross negligence, malfeasance or willful misconduct. The obligations of the parties pursuant to this Section 18 shall survive termination of this Agreement.

The other potentially relevant provision is Paragraph 14, which covers "Relationship of the Parties." It is identical in all the Service Agreements. That provision, in pertinent part, provides as follows:

> **14. Relationship of the Parties.** . . . No party shall be liable to any third party in any way for any unauthorized or negligent act or omission of the other party.

## II. Breaking Out the Different Indemnity Claims

The parties spend virtually all their efforts on the question of whether the indemnity provision[10] embraces recovery of attorney fees in an action between the contracting parties, i.e., the action brought on behalf of SMFF against DPM. That question boils down to whether the indemnity provision was intended to override the American Rule, under which parties cover their own legal expenses.  As recovery of attorney fees in actions between the contracting parties is the main focus of the parties — as well as the case law —  the Special Master will consider this question first.

A separate question of indemnity for attorney fees has also been raised — whether SMFF

---

provision on which DPM relies survives the termination of the Agreement. The JOLs do not contend that the indemnification provisions in the prior Service Agreements are invalid or unauthorized — rather they contend that the provisions don't cover the indemnity claims asserted by DPM.

[10] While there are several indemnity provisions they are all identical so they will from time to time be referred to in the singular.

5

agreed to indemnify DPM for attorney fees in any action brought by or on behalf of *PlusFunds.* That question is different from whether the indemnification provision covers attorney fees in actions between the contracting parties. It will be considered second.

The parties have devoted very little time to DPM's remaining indemnity claims — for legal expenses incurred in the Cayman Islands proceedings and for judgment for damages assessed against it in this action or in the Cayman proceedings. The validity of these claims raises different questions from the claims for legal expenses incurred in defending this action. Accordingly, they will be taken up in a separate section below.

### III. Does the Indemnification Agreement Cover Legal Expenses Incurred in Suits Between the Contracting Parties?

#### A. New York Case Law

DPM contends that the broad indemnity provision in the Service Agreement was intended to allow recovery of attorney fees in lawsuits between the contracting parties, i.e., SMFF and DPM. New York law on construing indemnity agreements[11] is essentially hostile to claims that the agreement covers attorney fees in a suit between the contracting parties. This is because, as the court stated in *U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 74 (2d Cir. 2004), the American Rule provides that attorneys fees "are not ordinarily recoverable." The *U.S. Fidelity* court explained that the American Rule was based on sound policy as it "provides freer and more equal access to the courts and promotes democratic and libertarian principles." (internal quotations and citations omitted). Of course, the parties may agree by contract to override the American Rule, but because of the strong policy underlying that Rule, there is a presumption against such an override. As the New York Court of Appeals put it in *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 549 N.Y.S.2d 365 (1989):

> Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule. . . .

> Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view. This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed . The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the

---

[11] Section 20 of the Service Agreements states that they "shall be construed in accordance with the laws of New York." The parties agree in their papers that New York Law applies.

surrounding facts and circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is *unmistakably clear* from the language of the promise. (emphasis added; internal citations and quotations omitted).

This case would be much easier if the *Hooper Associates* court, and subsequent case law, meant what it said about "unmistakable clarity." A rational interpretation of "unmistakable clarity" would mean you would have to say it clearly and specifically or you didn't cover it. A sensible interpretation would require some provision like: "In a suit between the contracting parties, the loser agrees to pay the winner's attorney fees" or words to that precise effect.[12] But it is plain, as will be discussed below, that New York courts do not require this level of clarity in order to find that the parties have agreed to indemnify attorney fees in suits between them. Rather, as the *Hooper Associates* court put it, "unmistakeable clarity" is to be found "from the language and purpose of the entire agreement and the surrounding facts and circumstances." Id. Thus, "unmistakable clarity" is really a misnomer for an approach that provides what amounts to a rebuttable presumption against a finding of indemnification of attorney fees in a suit between the contracting parties. The fuzzy use of the term "unmistakable clarity" has led to a boatload of cases, and pointers for contractual interpretation, which we will now discuss.

Judge Dolinger, in *Luna v. American Airlines*, 769 F.Supp.2d 231, 243-44 (S.D.N.Y.2011), provides an excellent  roadmap of the rules for construing indemnity provisions to determine whether they cover attorney fees for suits between the contracting parties:

> In applying this standard of unmistakable clarity, the courts have generally declined to infer indemnification obligations arising from an indemnitee/indemnitor suit if the contractual language does not expressly refer to or explicitly contemplate such circumstances and the context does not suggest that the contracting parties were specifically concerned with prospective litigation between themselves. . . .

> When an indemnification agreement contains provisions that appear to be inapplicable to suits between the contracting parties—such as requiring that notice of a claim be given to the indemnitor or allowing the indemnitor to assume the indemnitee's defense—the courts have concluded that the contract does not evidence an unmistakably clear intent to indemnify attorney's fees incurred in a lawsuit between the contracting parties. *See, e.g., Hooper Assocs., Ltd.*, 74 N.Y.2d at 492–93, 549 N.Y.S.2d at 367; *India.com, Inc.*

---

[12] For an example of an unmistakable intent to indemnify attorney fees between contracting parties, see the agreement in  *Bristol Inv. Fund, Inc. v. Carnegie Intern. Corp*., 302 F.Supp.2d 177 (S.D.N.Y.2003) ( "The party which does not prevail in any dispute arising under this agreement shall be responsible for all fees and expenses, including attorneys' fees, incurred by the prevailing party in connection with such dispute.").

*v. Dalal,* 2009 WL 5171734, *6 (S.D.N.Y.); *Nathan v. Cooper*, 2007 WL 4352705, *5 (S.D.N.Y.); *Sequa Corp. v. Gelmin*, 851 F.Supp. 106, 111 (S.D.N.Y.1994); *see also Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 458 F.Supp.2d 178, 188 (S.D.N.Y.2006) (determining indemnification clause did not cover damage claim by contracting party in part because it would render another clause in contract meaningless).

In contrast, when the language of an indemnification provision specifically evidences the parties' intent to cover claims by contracting parties, indemnification for suits against the indemnitor will be enforced. For instance, when confronted with indemnification provisions that include both broad indemnity clauses and narrower clauses that specifically target third-party claims, courts have determined that the broad provisions cover claims between the contracting parties, thereby ensuring that neither clause is superfluous. *See, e.g.*, *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 178–79 (2d Cir.2005); *Promuto v. Waste Mgmt., Inc.,* 44 F.Supp.2d 628, 650–52 (S.D.N.Y.1999) (where notice-of-claim and assumption-of-defense provisions explicitly apply only to indemnity of third-party claims, broader indemnification provision applied to claims by contracting parties); *Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 243 A.D.2d 325, 326, 663 N.Y.S.2d 160, 161 (1st Dep't 1997); *see also Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131, 146 (S.D.N.Y.2004) (where special notice-of-claim, assumption-of-defense and counsel-selection provisions apply only to third-party claims, broad indemnification provision covers claims by contracting parties).

Absent specific contractual language authorizing indemnification in suits between the contracting parties, the courts may still determine that the parties intended for such indemnification based on clear contextual evidence. Thus the court will enforce such an obligation if it is apparent that at the time of contracting the parties had no reason to anticipate the possibility of the indemnitee being faced with third-party claims. Thus, in *Breed, Abbott & Morgan v. Hulko*, the New York  Court of Appeals determined that an escrow agent must be indemnified for expenses incurred in litigation with a party to the escrow agreement because, at the time the agreement was drafted, there was no potential for third-party claims. The Court concluded that "it is difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify the escrowee" if not claims by contracting parties. 74 N.Y.2d 686, 687, 543 N.Y.S.2d 373, 374 (1989) (internal quotation marks omitted); accord, *Corazza v. Jacobs*, 277 A.D.2d 52, 53, 717 N.Y.S.2d 2, 3 (1st Dep't 2000) (escrow agent in real estate transaction covered by indemnification provision that required parties to indemnify agent for attorney's fees arising from duties as agent); *see also Hooper Assocs., Ltd.,* 74 N.Y.2d at 493–94, 549 N.Y.S.2d at 368 (distinguishing *Breed, Abbott & Morgan* because the court in that case could not conceive of any possible third-party claims against the escrow agent, but "[i]n this case however, the potential existed for third-party actions.").

By comparison, if third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent regarding the indemnification of attorney's fees incurred in suits between them, the courts have refused to award such

expenses as indemnification. *See, e.g., Bridgestone/Firestone, Inc.*, 98 F.3d at 21 (where indemnification clause is not "unmistakably clear" that it covers counsel fees in breach-of-contract action and "may easily be read as limited to third party actions", fees not indemnified); *Coastal Power Int'l, Ltd. v. Transcon. Capital Corp.*, 10 F.Supp.2d 345, 371 (S.D.N.Y.1998) (although indemnification clause could be interpreted to cover costs of litigation by contracting parties, absent "language clearly evidencing an intention that the loser in a suit for breach of the [contract] was intended to pay the winner's attorneys' fees," those fees are not indemnified); *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F.Supp. 203, 218–19 (S.D.N.Y.1997) (indemnification clause does not cover costs of litigation between parties because it is not "unmistakably clear" that they are covered, and provision "may easily be read to protect [party] from claims to its rights and interests by third parties") (quoting *Bridgestone/Firestone, Inc.*, 98 F.3d at 21); *Bourne Co. v. MPL Commc'ns, Inc.*, 751 F.Supp. 55, 57–58 (S.D.N.Y.1990) (indemnification clause not "unmistakably clear" that costs of litigation between parties covered despite reference to breach-of-contract actions, when clause is typical of type that contemplates indemnity for third-party claims). In short, if the contracting parties could have anticipated that they would be subject to third-party claims, courts apply a presumption against concluding that their indemnification clause covers litigation costs incurred in the course of resolving claims between those contracting parties. *See Broadhurt Invs., LP v. Bank of New York Mellon*, 2009 WL 4906096, *3 (S.D.N.Y. Dec. 14, 2009) (because potential for third-party claims exists, attorneys' fees incurred in litigation between parties not covered by general language of indemnification provision); *Nathan,* 2007 WL 4352705, at *5 (where real estate purchase contract provides that indemnification provision applies to brokers' third-party claims for lost commissions, attorneys' fees in suit between parties not indemnified).

--------------

Under the above case law as set forth by Judge Dollinger,  the following principles of construction apply to the Service Agreements at issue in this matter:

1. The presumption is that the agreement does not cover attorney fees in an action between the parties. Thus if the indemnity provision in this case is subject to a reasonable interpretation one way or another, the agreement must be construed not to indemnify DPM's legal expenses in defending against SMFF claims. *See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.,* at 369 F.3d 34, 75 (2d Cir. 2004) (unmistakable clarity standard not met where "[t]he only thing that is unmistakably clear here is that we grapple with a contract term that is susceptible to two, equally valid interpretations. . .  In the final analysis, it is the Obligees who bear the heavy burden of persuading us to depart from the American Rule, . . .  and we find that they have not met that burden.").  *See also PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*,  2006 WL 3370698, at *1 (2d Cir. 2006) ("the test is whether the intent to indemnify is 'unmistakably clear from the language of the promise,'  *Hooper*, 74 N.Y.2d at 492, not whether the agreement could be read to provide for indemnification [in a suit between the parties].").

2. A provision containing only broad language that does not unequivocally indicate that the parties intended to indemnify attorneys' fees in lawsuits between themselves will ordinarily not support a claim for indemnity in suits between the parties. *Broadhurst Investments, LP v. Bank of*

*New York Mellon*,  2009 WL 4906096, at *3 (S.D.N.Y.).

3. On the other hand, if it is apparent that no third party claims were contemplated by the parties, then the agreement should be construed to provide indemnity for claims between the parties — otherwise the agreement would be superfluous. *Breed Abbott, supra.*  Notice of claim provisions and assumption of defense are relevant indicators of whether third party claims are contemplated. *Hooper Associates, supra; Adesso Cafe Bar & Grill, Inc. v. Burton,* 74 A.D.3d 1253, 904 N.Y.S.2d 490, 491 (2d Dept.2010)  (conclusion that third party suits were contemplated is "bolstered" by notice of claim provisions).

4. But legal expenses for a suit between the contracting parties are not indemnified  where future third-party claims were possible at the time of the contract. *See, e.g.*, *Bridgestone/Firestone, Inc.*, 98 F.3d at 21 (where indemnification clause is not "unmistakably clear" that it covers counsel fees in breach-of-contract action and "may easily be read as limited to third party actions", fees not indemnified).   The question is not whether third party claims are highly likely or meritorious, but whether there is a "potential" for such claims.  *Goshawk Dedicated Ltd. v. Bank of New York,* 2010 WL 1029547, at *10  (S.D.N.Y.) ("[T]he potential for third-party claims means that the contractual indemnification provisions cannot definitively be read to refer to non-third-party claims, and thus the parties' intent to indemnify such claims is not unmistakably clear.").

5. Indemnification provisions that specifically distinguish third-party claims from interparty claims indicate an intent to cover claims between the parties, as those distinctions "would be surplusage if [the indemnification provision] did not refer also to claims between the parties themselves."   *Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131, 146 (S.D.N.Y.2004); *see also Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 651 (S.D.N.Y.1999) (noting that some provisions of the agreement at issue distinguished between inter-party claims and third-party claims).

**B. Applying the Case Law to the Claim for Indemnity for Legal Expenses Incurred in Defending Against SMFF Claims**

Applying the above principles to the Service Agreements, the Special Master concludes that the parties did not, with unmistakable clarity, indicate an intent to indemnify DPM's attorney fees or other litigation expenses incurred in a suit between the contracting parties. The most important factors supporting that conclusion are:

***1. One Indemnity Clause Covers Attorney Fees and the Other Does Not:*** Reading the indemnity provision as a whole, it appears that the parties did not contemplate that DPM's attorney fees would be covered. The first sentence of the provision is about *DPM's* obligation to indemnify and it specifically refers to indemnification "from and against any and all liabilities, claims, costs, fines, damages, expenses, losses *and attorneys' fees* arising out of or in connection with any failure of DPM and DPM Ltd.  to perform their obligations hereunder." (Emphasis added). In contrast, the second sentence —  which is about SPhinX's obligation to indemnify DPM  —  refers to

indemnification from "any and all liabilities, claims, costs, fines, damages, expenses or losses incurred by DPM or DPM Ltd in consequence of the performance of their obligations under this Agreement." Why, in the same indemnity provision, are attorney fees specifically covered for one indemnifying party but not the other? In order to give the specific reference some meaning, it would appear that the second sentence should be construed to not include recovery of attorney's fees. While that construction may not be dispositive of attorney fees expended in claims involving third parties (as will be discussed below) it should — given the American Rule and the court's need to find unmistakable clarity — require a finding that indemnification of DPM's attorney fees expended in suits *between* SPhinX and DPM are not covered.[13] It certainly doesn't comport with an intent to cover attorney fees in suits between the parties with unmistakable clarity when the parties were clearly aware of the possibility of indemnification of attorney fees and yet did not specify such a recovery for DPM.

DPM argues that the indemnification provision on which it relies is in all material respects identical to the indemnity provision found to cover attorney fees in suits between the parties in *Breed Abbott, supra.* But *Breed Abbott* involved a single indemnity provision in an escrow contract providing that "the parties hereby indemnify the escrowee and hold the escrowee harmless from any claims, damages, losses or expenses arising in connection herewith." The court in *Breed Abbott* did find that a broad indemnity clause could be construed to cover attorney fees without specifically mentioning them, but that court did not have before it *two* clauses — one that specifically mentioned attorney's fees and the other that did not.[14]

***2. One Indemnity Clause Is Tied to Breach of the Agreement and the Other Is Not:*** A comparison of the two different indemnity provisions in ¶ 18 of the Service Agreement raises an inference that SPhinX agreed to indemnify DPM for third party claims — and therefore that the indemnification provision is presumed to cover such claims and not intended to override the American Rule in suits between the contracting parties. The provision on SPhinX indemnifying DPM states that it covers damages, etc. suffered by DPM, "in consequence of the performance of [DPM's] obligations under this Agreement." In contrast, the provision on DPM indemnifying SPhinX covers damages, etc. suffered by SPhinX "arising out of or in connection with any *failure* of [DPM] to perform their obligations hereunder." (Emphasis added). The latter clause covers only claims arising from *the breach of the Service Agreement* while the former provision (the one at issue here) does not mention the breach of the Service Agreement but rather refers to claims resulting from any performance by DPM of any obligations under the Agreement. If DPM properly performed

---

[13] It is true that the indemnification provision as to DPM's right is broad — it covers "all . . . expenses." It is also true that attorney fees do not have to be specifically mentioned to be recoverable. See, e.g., *Luna v. American Airlines*, 769 F.Supp.2d 231, 243 (S.D.N.Y. 2011). But in this case these principles are not dispositive where attorney fees are specifically mentioned as recoverable by one of the contracting parties but not the other.

[14] As discussed below, *Breed Abbott* is also distinguishable on an even more important ground, i.e., that there were no potential third party claims in that case.

its obligations under the Service Agreement, there would be no question of indemnifying SPhinX (as opposed to a third party) because SPhinX would have no claims against it. Thus the broader reference to performance of obligations under the Agreement implicitly contemplates claims from third parties — claims for acts *properly* done under the Agreement but which nonetheless result in a suit by third parties. The first indemnity provision indicates that the parties knew how to cover suits between the parties — and how to write a narrower provision —  if they wanted to do so.

**3. Expenses From Third Party Lawsuits Were Possible:** Unlike *Breed Abbott,* there was at the time of contracting  the potential for third party claims arising from DPM's performance under the Service Agreement — and the *possibility* of third party claims is what is required to trigger the *Hooper Associates* presumption that the indemnity provision does not cover attorney fees in an action between the contracting parties. *See Luna v. American Airlines, supra* ("if third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent regarding the indemnification of attorney's fees incurred in suits between them, the courts have refused to award such expenses as indemnification").

Under the Service Agreement, DPM among other things calculated NAVs; prepared reports and balance sheets that went to auditors; reconciled cash and security positions; produced client statements and make them available to all clients; provided Risk Reports to support the needs of the risk committees; acted as registrar and transfer agent with respect to the shares,  processed transfers and redemptions, and maintained the register and subscriber information; and prepared unaudited financial statements for delivery to investors.[15]

Given the breadth of DPM's responsibilities under the Service Agreement, it doesn't take much work to think of possible third parties who could plausibly sue DPM  for damages.[16] Examples of such possibilities include suits by SPhinX investors for misstatements of NAV's and

---

[15] A full discussion of the number and breadth of DPM's duties under the Service Agreement is found in the DPM R and R at 20-21.

[16] The JOLs in their papers rely on the fact that the Offering Memoranda specifically demonstrate that the parties anticipated potential claims by third parties. See July 12, 2002 SPhinX Offering Memorandum at 26 ("The Company has agreed to indemnify the Administrator [DPM] from . . . claims . . . which may be imposed on, incurred by or asserted by third parties against the Administrator in performing its obligations under the Administration Agreement."). This provision in the Offering Memoranda may not, however, be considered in interpreting the indemnity provision of the Service Agreement, because the Service Agreement contains a provision that its terms are to be exclusive. See Service Agreement ¶21 ("This Agreement contains the sole and entire agreement between the parties . . . "). In any case, at oral argument, counsel for the JOLs stated that it was not necessary to the JOLs' position to rely on the Offering Memoranda. See Transcript of Oral Argument at 41.

client statements;[17] suits, such as for contribution, by SPhinX auditors who relied on DPM's work product in preparing financial statements; and a suit by PlusFunds, for misstatements made to the Risk Committee. Such claims only need to be possible at the time of the contracting, but in fact the suit by PlusFunds has of course been brought and several of PlusFunds' claims for relief have withstood a motion to dismiss.[18]

Finally, even if there were no potential third-party suits *against* DPM arising out of its performance of the Service Agreement, there was nonetheless the possibility of expenses and attorney fees arising from suits by third parties against *SPhinX*. As discussed above, DPM was the custodian of SPhinX's records and as such it could well have incurred expenses responding to discovery demands by parties suing SPhinX. Anyone familiar with litigation — presumably the lawyers drafting the indemnity agreements — would be aware that the cost of producing records, even as a nonparty to litigation, is substantial and involves substantial lawyer time. It is not at all speculative to think that contracting parties would be aware of such a possibility and that DPM would seek indemnification for such costs.

DPM's performance under the Service Agreement was vastly more likely to affect the legal interests of third parties (with consequent expenses to DPM) than the performance involved in the case on which DPM centrally relies: *Breed Abbott, supra.* In that case, two parties to a real estate contract agreed to indemnify their escrow agent for damages and expenditures resulting from the agent's performance of the escrow agreement. The Court of Appeals unsurprisingly held that there were no potential third party claims that could have been contemplated by the parties. Whatever the escrow holder did with the money, it would affect only the two parties to the real estate transaction. Accordingly, the indemnity provision had to apply to suits between the contracting parties or it would have been superfluous. In contrast, as stated above, there was at the very least the possibility that DPM could incur litigation expenses from suits brought by third parties. *See, e.g., Fishbein v. Miranda*, 785 F.Supp.2d 375, 392 (S.D.N.Y. 2011) ("in view of Crossroads' broad responsibilities under the services agreement—such as, processing of all claims, collecting all contributions, and developing and maintaining a computerized system for the billing of all employers and the payment of claims —the Court has no doubt both parties anticipated situations where Crossroads would be subject to third-party claims") (internal citation and quotation omitted).

_____

[17] DPM argues that the claims of SPhinX investors would be — and have been held to be — derivative and so the investors would not have standing to bring them. See the Standing R and R. But the mere fact that a cause of action was dismissed (and only after substantial consideration by the Special Master and Judge Rakoff) certainly does not mean it lacked the potential to be brought at the time of contracting. The claims of the investors that were dismissed in the Standing R and R were by no means frivolous.

[18] The conundrum of PlusFunds being a third party with a potential claim against DPM and yet claims by PlusFunds not triggering indemnity for legal expenses is discussed in Part IV, infra.

***4. No Narrow Clause Co-existing With a Broad Clause:*** As Judge Dollinger recognized in *Luna v. American Airlines*, *supra*, " when confronted with indemnification provisions that include both broad indemnity clauses and narrower clauses that specifically target third-party claims, courts have determined that the broad provisions cover claims between the contracting parties, thereby ensuring that neither clause is superfluous." In this case, that rule of construction actually works *against* DPM. There are two indemnity clauses, but the broader one is the one on which DPM relies. The clause that runs in favor of SPhinX is narrower because it is triggered only by DPM's breach of contract, while the clause running in DPM's favor is triggered by any performance under the Service Agreement. Moreover, for the reasons expressed above, the clause that more directly pertains to third party claims is the one on which DPM relies. That clause appears geared toward third party claims because it covers damages from any actions by DPM, as opposed to breaches, under the Service Agreement — and as stated above, there would be a focus on actions other than breaches if suits between third parties were contemplated. Thus, DPM cannot come within the "broad clause/narrow clause" rule of construction discussed in *Luna*.

### C. DPM's Arguments

DPM makes a number of arguments in support of its position that the indemnity provision covers attorney fees in suits between the contracting parties with unmistakable clarity. These arguments are as follows:

***1. Paragraph 14 of the Service Agreement:*** DPM relies on Paragraph 14 of the Service Agreement to conclude that the parties specifically excluded the possibility of third-party claims. If that were so, then it is likely under *Breed Abbott* that the indemnification provision would cover attorney fees in actions between the parties, because otherwise the clause would be superfluous. But Paragraph 14 does not provide what DPM says it does. That Paragraph states in pertinent part as follows:

> **14. Relationship of the Parties.** . . . No party shall be liable to any third party in any way for any unauthorized or negligent act or omission of the other party.

Far from excluding the possibility of third party suits, this paragraph *contemplates the existence of third party suits* — and provides that when such suits are brought, each of the contracting parties stand on their own regarding acts of wrongdoing. That is, the unauthorized or negligent act or omission of one of the parties cannot be attributed to the other. The paragraph obviously does not (and cannot) say that one of the contracting parties will not be liable to third parties for its own wrongdoing. Moreover, this paragraph deals with *liability*. It does not at all involve the question of indemnification of expenses caused by lawsuits brought by third parties. So Paragraph 14 does not help, and indeed sets back, DPM's argument.

***2. Three Limited Exceptions in the Indemnification Provision:*** DPM emphasizes that the indemnification provision on which it relies contains limited exceptions. The penultimate sentence of Paragraph 18 states as follows:

> Nothing contained herein shall require either party to indemnify the other for acts of the others, which constitute gross negligence, malfeasance, or wilful misconduct.

DPM argues that if the parties had wanted to preclude indemnity for suits between the parties, they could have simply stopped the sentence before reaching the exceptions — i.e., "Nothing contained herein shall require either party to indemnify the other for acts of the others." By creating exceptions, they must have intended to allow for claims between the parties for acts that did not constitute gross negligence, malfeasance, or wilful misconduct.

But DPM's interpretation of the above sentence suffers the same infirmity as the indemnitee's interpretation in *Sequa Corp. v. Gelmin*, 851 F.Supp.106, 110 (S.D.N.Y.1994). The *Sequa* court reviewed an indemnity provision like that in the instant case — excluding indemnity for gross negligence or wilful misconduct. The *Sequa* court stated that contractual language about the damages and expenses that will or will not be indemnified "refers solely to the type of claims that are covered, not the identification of parties who may assert those claims." *See also Fishbein v. Miranda*, 785 F.Supp.2d 375, 392 (S.D.N.Y.2011) (language describing claims that will or will not be indemnified "refers solely to the type of claims that are covered, not the identification of the parties who may assert those claims."); *Broadhurst Investments, LP v. Bank of New York Mellon,* 2009 WL 4906096, at *2 (S.D.N.Y.) (same). Consequently, the language cited by DPM does not overcome the obstacle that the intent to indemnify attorney fees in an action between the contracting *parties* must be "unmistakably clear."

**3. Absence of Notice of Litigation and Assumption of Defense Provisions:** DPM's strongest argument is that the indemnity provision lacks two clauses that are typically found when the parties contemplate indemnification for third-party actions — clauses requiring notice of litigation and allowing assumption of the defense. Such provisions provide an obvious indicator that the parties are contemplating third-party suits, because they have no applicability in lawsuits between the parties themselves. In suits between the parties,  notice to the indemnitee is given by the pleading filed against it, and it would be silly to talk about  the indemnitor assuming the defense in a suit in which it is the named party.

The question is whether the absence of such provisions is sufficient to establish, with unmistakably clarity, that SPhinX and DPM intended the indemnity provision to cover *only* lawsuits between the contracting parties. In *Hooper Associates, supra,* 74 N.Y.2d at 492, the court, referring to the notice of claim and assumption of defense provisions in the indemnity agreement before it, stated that "[o]ur interpretation also is *supported by* other provisions in the contract which unmistakably relate to third-party claims." (emphasis added).  A fair reading of *Hooper Associates* is that the presence of clauses that could have applicability only in third-party lawsuits "supports" a finding that the indemnity provision covers third-party suits (and therefore does not cover suits between the parties  —  but those clauses are not *required* to find that the parties contemplated suits by third parties. *See also Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 200 (2nd Cir. 2003) (reading *Hooper* to mean that the presence of notice of claim and assumption of defense provisions "also supported" its finding that the indemnification clause did not reach suits between the parties).

In this case, the lack of notice of claim and assumption of defense provisions is essentially the *only* circumstance that cuts in favor of a finding that third party lawsuits were not contemplated. All the other factors point the other way, including, as discussed above: 1) the fact that DPM is indemnified for actions under the agreement, rather than just claims for breach that would be solely between the contracting parties; 2) the possibility of third-party lawsuits arising from DPM's performance under the Service Agreement; and 3) the fact that Paragraph 14 specifically contemplates that third-parties will sue and try to attribute the wrongful conduct of one contracting party to the other. This is more than enough to indicate that the parties did not, with unmistakable clarity, intend to indemnify DPM for attorney fees in a suit between the parties. Moreover, a number of cases have found indemnity provisions to preclude recovery of attorney fees in suits between the contracting parties even though the contract, as here, did not include notice of litigation or assumption of defense clauses. *See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 74-75 (2nd Cir. 2004); *Broadhurt Invs., LP v. Bank of New York Mellon*, 2009 WL 4906096, at *3 (S.D.N.Y.).

In the end, the most that can be said about the lack of notice of claim and assumption of defense clauses is that DPM's construction of the indemnity provision is perhaps as plausible as the JOLs' construction. But as discussed above, if an indemnity provision can be construed one way or another, then under New York law it must be construed to exclude recovery of attorney fees in suits between the contracting parties.

### 4. Inappropriate to Rule on a Motion to Dismiss:

DPM argues that the question of whether an indemnity provision covers legal expenses in suits between the contracting parties is not one that should be decided on a motion to dismiss. For this argument, DPM is essentially contending that the intent of the parties is unclear and so is a question for the factfinder.  It is generally true that a contract that is ambiguous raises a question of fact as to its meaning. *See Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63 (2d Cir. 2008)(summary judgment inappropriate where contract terms are ambiguous and extrinsic evidence inconclusive).  But the question here is whether the indemnity provision covers legal expenses in suits between the contracting parties with "unmistakable clarity." It follows, and the courts have so held, that any ambiguity on the question does not create a question of fact but rather requires a finding that attorney fees in suits between the contracting parties are not covered. *See U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.,* supra,   369 F.3d at 75 (2nd Cir. 2004) (unmistakable clarity standard not met where "[t]he only thing that is unmistakably clear here is that we grapple with a contract term that is susceptible to two, equally valid interpretations."). In other words, the substantive requirement for unmistakable clarity trumps the general rule that ambiguity in a contract raises a question of fact.[19]

---

[19] It should also be noted that as a practical matter, there is nothing that could be raised at a trial that would assist in the construction of the indemnity clause. DPM's counsel conceded that the meaning of the contract "is a question of law for the court to decide." Transcript of Oral

_____

***Conclusion on the Motion to Dismiss the Counterclaim for Indemnification of Legal Expenses in the Lawsuit Related to Claims on Behalf of  SMFF***

For all the reasons discussed above, the indemnity provision in the Service Agreement does not, with unmistakable clarity, provide for indemnification of DPM's legal expense related to the claims brought on behalf of SMFF. ***Accordingly, DPM's counterclaim to indemnify it for legal expenses incurred in this action with respect to claims brought on behalf of SMFF should be dismissed with prejudice.***

## IV. Does the Indemnity Provision Provide for Recovery of Legal Expenses Related to Claims on Behalf of PlusFunds?

What has been decided so far is that the indemnity provision in the Service Agreement does not, with unmistakable clarity, provide recovery of legal expenses in lawsuits *between the contracting parties*. But in this lawsuit, indemnity is also sought for  legal expenses incurred with respect to the claims of PlusFunds as well. And PlusFunds is not a signatory to the Service Agreements at issue in this matter.[20]

### A. PlusFunds as a "Non-Third Party"

This is where the arguments get interesting. DPM argues that if the broad indemnity clause is read to contemplate and cover actions by third parties (as it has been read here), then DPM must be entitled to legal expenses incurred with respect to claims brought on behalf of PlusFunds, because PlusFunds is not a contracting party — and indemnification of legal expenses with respect to against third-party claims *must* be within the contract otherwise the indemnity provision would have no effect.  *See CBS Corp. v. Eaton Corp.,* 2010 WL 1375169, at *4 (S.D.N.Y.) ( *Hooper Associates* standard does not apply to recovery of attorney fees expended in a third-party action).  DPM notes

_____

Argument 67. Counsel speculated that testimony might be taken from lawyers for the contracting parties on what they intended in drafting the provision, but it is hard to see how that would lead to a finding that the parties expressed the intent,  with unmistakable clarity, to adopt a "loser pays" rule in suits between them.

[20] Counsel for the JOLs at oral argument conceded that PlusFunds was not a signatory to the relevant Service Agreements. See Transcript of Oral Argument at 46 ("It's clear that they [PlusFunds] are not a signatory to it.").

quite correctly that PlusFunds is referred to throughout the Service Agreement as "Investment Manager," but it is conspicuously absent from the indemnification provision. DPM thus concludes that the parties knew PlusFunds and SMFF were distinct — and this conclusion is fortified by the fact that PlusFunds *was* added to the indemnification provision of the 2006 Service Agreement. The JOLs contend that the 2006 Service Agreement was not properly authorized, but the point for present purposes is that the parties included PlusFunds in the 2006 indemnity provision and not the ones at issue here — thus evincing an intent not to include PlusFunds as a contracting party to the indemnity provisions at issue in this matter, or, as DPM puts it: "The fact that the parties added PlusFunds indicates that the parties knew and understood that PlusFunds was not a party to the indemnity clause." DPM Supplemental Memorandum at 11. *See also Tonking v. Port Authority of New York and New Jersey*, 3 N.Y.3d 486, 490, 787 N.Y.S.2d 708 (2004) ("If the parties intended to cover Bovis [a non-signatory] as a potential indemnitee, they had only to say so unambiguously.").

The JOLs argue that PlusFunds, while not a contracting party, is not truly a third-party to the contract either,  and so indemnification of DPM's legal expenses with respect to PlusFunds is covered by the unmistakable clarity rule. The JOLs emphasize the close relationship between SPhinX and PlusFunds and the impact of the Service Agreement on the interests of PlusFunds — an impact known to the contracting parties. The JOLs are not arguing that *PlusFunds* is free from indemnifying DPM for legal expenses in the suit between them. DPM is not seeking money from PlusFunds in this Counterclaim, for the simple reason that PlusFunds is not a signatory to the Service Agreement. Rather, the argument is that *SPhinX* is not required to indemnify DPM for legal expenses incurred in the lawsuit brought on behalf of PlusFunds, because the parties contracted for legal expenses only for suits brought by third parties and PlusFunds is a "non-third party."[21]

The tension with the JOLs' previous arguments on why the indemnity agreement covers third-party claims is palpable. In listing possible third-party claims to which DPM might be subject,

---

[21] Plaintiffs' Supplemental Brief at 10.

The Amended Complaint avers that PlusFunds was a third-party beneficiary of the Service Agreement. See ¶ 299.  But that assertion is not and cannot  be the basis for construing the indemnity agreement as the JOLs do.  PlusFunds' third-party beneficiary status has no bearing on whether *SPhinX* is required to indemnify the legal expenses of DPM related to the claims of PlusFunds. Third-party beneficiary status determines  whether *PlusFunds* has the enforceable right to receive the *benefits* of DPM's proper performance of the Service Agreement. A third-party beneficiary does not, by that status, become a party to the contract or take on any of the obligations of any party to that contract. See Restatement Second of Contracts Chapter 14 (noting the rights of third-party beneficiaries but imposing no contractual obligations on such beneficiaries). The question in this case is the existence and scope of an *obligation*  to indemnify DPM. PlusFunds' asserted third-party beneficiary status has no relevance to that question. The most that could be said on the basis of third-party beneficiary status is that PlusFunds should receive the benefit of the "unmistakable clarity" rule of construction. But that is not a benefit of the contract, and at any rate any benefit would run not to PlusFunds but to SPhinX.

the JOLs' counsel at oral argument emphasized that DPM "provided services to the risk committee, which was at PlusFunds. That's another third party." Transcript of Oral Argument at 37. So the JOLs are clearly walking a tightrope here — contending that PlusFunds is a third-party, so that its potential claims triggered the "unmistakable clarity" rule as to recovery of legal expenses in suits between the parties; but also contending that PlusFunds is a "non-third-party" so that indemnification of DPM's legal expenses incurred due to PlusFunds' claims is barred by the "unmistakable clarity" rule. The remainder of this section assesses the JOLs' legal arguments to determine whether they successfully walk that tightrope.[22] Ultimately, as we will see, they walk the tightrope.

## B. Case Law Treating Certain Non-Signatories as "Non-Third-Parties"

The JOLs rely on two cases in which courts denied indemnification of legal expenses incurred defending claims of a plaintiff who was not a signatory to the indemnification agreement, i.e., cases in which the court purportedly found a claimant to have "non-third-party" status. The first case is *Goshawk Dedicated Ltd. v. Bank of New York*, 2010 WL 1029547 (S.D.N.Y.2010). *Goshawk* presents an exceedingly complicated fact situation. The case involved transfers of viatical life insurance policies; eventually a Lloyd's syndicate, of which Goshawk was the only member, sued Bank of New York for misconduct that stemmed from two agreements. One was a security agreement and one was an escrow agreement. Goshawk was a signatory to the latter and not the former. After the suits were dismissed, Bank of New York sought indemnity from ROP for legal expenses incurred in the action brought by Goshawk. ROP was a signatory to both agreements, and each agreement contained a broad indemnity clause that the court found was subject to the unmistakable clarity rule, thus precluding legal expenses in suits between the contracting parties. Thus it behooved the Bank of New York to argue that the indemnity provision in the security agreement covered attorney fees incurred in defending the claim brought by Goshawk (even though the provision in the escrow agreement did not) because Goshawk was not a signatory to the security agreement.

The court found that even though Goshawk was not a signatory to the security agreement, its claims against Bank of New York for actions taken pursuant to that agreement should not be treated as third-party claims. The court emphasized that Goshawk was a party to the escrow

---

[22] DPM argues that the JOLs are judicially estopped from arguing that PlusFunds is a "non-third party" because throughout this MDL they have argued that PlusFunds is an entity separate from SPhinX, with separate damages. While DPM has correctly characterized the JOLs' arguments as to PlusFunds in this MDL, there is no judicial estoppel because the JOLs are not here arguing that PlusFunds is somehow merged with SPhinX. Rather they are arguing that while PlusFunds is a separate entity with separate damages, it is a "non-third-party" because "PlusFunds was integral to the creation and performance of the Service Agreement" and so "indemnity of DPM in connection with the PlusFunds claim is inappropriate." Supplemental Memorandum at 11.

agreement, and the security agreement  repeatedly referenced the escrow agreement. Furthermore, the escrow agreement was functionally tied to the security agreement because it provided that Bank of New York  would continue its role in ensuring the payment of premiums on the viatical life insurance policies in accordance with the terms of the security agreement. The court also noted that representations by Goshawk were incorporated into the security agreement. Finally, Bank of New York's role in the payment of the life insurance premiums was "arguably the only part of the [security] agreement relevant to the underlying litigation" and the provisions governing such payment were incorporated by reference in the escrow agreement. Because these two agreements were so intertwined, the court concluded that Bank of New York's legal expenses incurred in litigation with Goshawk "should not be considered to have arisen from a third-party claim for the purpose of indemnification under the [security] agreement."   Accordingly the claim for attorney fees was rejected under he "unmistakable clarity" rule. Id. at *8.

The *Goshawk* case provides some support to the JOLs' position regarding the PlusFunds claim, because it shows that there may be such a thing as a "non-third party" for purposes of construing indemnity provisions.  But *Goshawk* does not mandate a finding that claims of PlusFunds were within the presumptive intent of the contracting parties that they were not indemnifying attorney fees in suits between them. The critical part of the *Goshawk* analysis is that there were *two* intertwined agreements — one to which Goshawk[23] was a signatory and the other to which it was not. As the "unmistakable clarity" rule applied to claims by Goshawk under the escrow agreement, and the escrow agreement was so intertwined with the Security Agreement, it  made sense to apply the "unmistakable clarity" rule to both. Otherwise the presumptive intent in the escrow agreement — not to indemnify legal expenses in suits between the contracting parties, including Goshawk — would have been undermined by the intertwined security agreement. In other words, the two related agreements needed to be read as one. In this case, there is no intertwining of agreements with similar indemnity clauses. There are not two agreements that need to be read together to make sense of the indemnification clause. Thus *Goshawk* does not require dismissal of DPM's claim for indemnification of legal expenses incurred in defending against PlusFunds' claims.

The second case relied upon by the JOLs is *Sequa Corp. v. Gelmin*, 851 F.Supp.106 (S.D.N.Y.1994). The plaintiffs in *Sequa* were a parent (Sequa) and a subsidiary; the subsidiary was a signatory to the indemnification agreement, but the parent was not. The court found first that the parties had not expressed, with unmistakable clarity, an intent to indemnify attorney fees in an action between the contracting parties. The defendant argued that it should be able to recover attorney fees for claims brought by the parent — but the court found that the parent should not be treated as a third party. The court's analysis was brief:

> The effect of such an interpretation . . . would be to convert the agreement into a release—if Sequa sued defendants and prevailed, defendants could seek indemnification from Sequa's subsidiary for any resulting liability and expenses. Such an intent is not unmistakably clear.

---

[23] Specifically, the Syndicate of which Goshawk was the only member.

Id. at 111.

Sequa provides some support for the JOLs' position, again because it recognizes the concept of a non-third party.  But it does not mandate a finding that claims by PlusFunds come within the presumption that the parties were excluding attorney fees from recovery in actions between them. Sequa involved a parent and a subsidiary. If the subsidiary pays for the suit of the parent, that is essentially a direct payment of attorney fees between the contracting parties, and thus falls within the unmistakable clarity rule. The crucial point is that Sequa is based on the parent-subsidiary relationship. There is no such relationship between SPhinX and PlusFunds in this case. They were separate entities with separate finances.

-----------

In sum, the sparse case law cited by the JOLs provides some support for including PlusFunds' claims within the exclusion of attorney fees, but that case law does not control the result in this case.

### C. Real Party in Interest.

The JOLs acquired PlusFunds' causes of action,  and any recovery by the SPhinX Trustee on PlusFunds' claims goes to the benefit of the SPhinX Funds. See First Amended Complaint at ¶ 32. The JOLs argue that the SPhinX Funds are therefore the real parties in interest on the PlusFunds claims and so because SPhinX did not agree to indemnify for legal expenses in claims brought by itself, that agreement should also extend to the PlusFunds claims.

But the ultimate question is the intent of the parties that contracted to the indemnity provision. At the time of those contracts, there was clearly no anticipation that both PlusFunds and SPhinX would be bankrupt and that SPhinX would be assigned PlusFunds' claims. That assignment, made so long after the indemnification provisions were entered into, cannot plausibly be relevant to the construction of those provisions. Moreover, as the court stated in Long Is. Radiology v. Allstate Ins. Co., 36 A.D.3d 763, 765, 830 N.Y.S.2d 192, 194 (2d Dept. 2007), an assignee stands in the shoes of the assignor "and thus acquires no greater rights than its assignor." Thus, if PlusFunds' claims were the subject for indemnification of legal expenses, they cannot and do not lose that character simply by being assigned.

### D. Overlap of Legal Expenses for Defending SMFF Claims and Those for Defending PlusFunds Claims.

The JOLs' most compelling argument for rejecting indemnity of attorney fees expended in relation to PlusFunds' claims is not that PlusFunds is some kind of "non-third party." Rather it is

that the attorney fees DPM expends in relation to PlusFunds essentially overlap those expended in relation to SMFF. The JOLs contend that it makes no sense to find that the SPhinX Estate does not have to pay DPM's attorney fees related to SMFF, but it does have to pay those fees related to PlusFunds — because the end result is that SPhinX will have to pay essentially all the attorney fees expended by DPM in this action. The JOLs rely upon *Tecnoclima, S.p.A. v. PJC Grp. of N.Y., Inc.,* 1995 WL 390255 (S.D.N.Y.1995). In *Tecnoclima,* Circle brought an action brought against a counterparty to an indemnity agreement (Calortecnica) and also against some affiliates of Calortecnica. The suit was for indemnification after Circle had been found subject to liability for breach of contract in a distributorship. Circle sued for recovery of the payment and attorney fees in the underlying action, and the court found that the plaintiff was entitled to indemnification for these losses. The next question was whether Circl could recover the expenses for bringing its action against Calortecnica and the affiliates. The court first found that the indemnity agreement did not cover legal expenses for claims between the contracting parties, i.e., Circle and Calortecnica, relying on *Hooper Associates*.

As to the claims against the affiliates, the court denied indemnification for legal expenses. The court stated that "Circle's claims against Calortecnica . . . were sufficiently similar to its claims against the . . . Affiliates, and involved sufficiently similar facts. Accordingly, in this Court's view, Circle's litigation with the remaining [affiliates] did not result in the expenditure of additional fees." Because legal expenses could not be recovered against Calortecnica under the "unimistakable clarity" rule, the same expenses could not be recovered against the affiliates.

The *Tecnoclima* court did not expressly give consideration to which rule of construction should predominate when a third-party is included in an action between contracting parties to an indemnity agreement, and yet the presence of the third party does not add any legal expenses to the party seeking indemnity. It could go either way. The *Tecnoclima* court seemed to assume that when such parties are joined, the *Hooper* rule predominates and so none of the attorney fees are recoverable, but the court did not rely on any policy or case law for coming to that conclusion.

The answer should come down, of course, to the intent of the contracting parties. *Hooper Associates* presumes that the contracting parties do not intend to indemnify for attorney fees in actions between them, but what would the parties think about actions in which a contracting party is joined with a non-contracting party and the expenses overlap? Considering that question under the case law and the specific terms of the indemnity provisions at issue in this case, the Special Master concludes that DPM is not entitled to recover attorney fees related to the case against PlusFunds, to the extent they overlap the fees expended in relation to the case against SMFF. What follows is an explanation for this result.

First, New York law gives a strong preference to contracting parties paying their own legal expenses in suits between them. The basis for that preference is adhering to the American Rule and the policies that support it, discussed above. Given that strong preference — and presumption of the parties' intent — it undermines the American Rule to require the loser to pay legal expenses related to a third party when those same expenses are also allocated to the case against the contracting party. Given the all-or-nothing nature of the decision to be made — all legal expenses

are indemnified in the multi-party action or not — the rule of unmistakable clarity and adherence to the American Rule certainly cautions against awarding legal expenses that in effect indemnify a party for legal expenses in a suit between the contracting parties. If the presence of the third-party makes no practical difference in the expenditure of attorney fees, then the suit should be treated as one solely between the contracting parties and so subject to the rule of unmistakable clarity.

Second, the *Tecnoclima* decision, while perhaps short on analysis, nonetheless held that legal expenses could not be recovered where the party to an indemnity agreement expends fees to litigate against overlapping claims and defenses by a contracting party joined with a non-contracting party. DPM has not cited a case that comes out the other way, i.e., rejecting the American Rule when legal expenses are directed to such overlapping claims.

Third, it is to be remembered that there is a question whether DPM contracted for indemnification of attorney fees at all. As stated above, the indemnification in SMFF's favor specifically calls for payment of attorney fees and the indemnification in DPM's favor does not. That does at all not mean that DPM's claim for attorney fees expended with respect to claims of a third party in an independent lawsuit would be dismissed on the pleadings — because the indemnity provision is at least ambiguous on whether it covers DPM's attorney fees in third-party suits. But the ambiguity does mean that, all things being equal, the indemnity provision should be interpreted to limit recovery of attorney fees rather than to grant such recovery.

Given all these factors, DPM's claim that it is entitled to indemnification of legal expenses related to PlusFunds' claims must be rejected as not contemplated by the contracting parties — at least insofar as those expenses replicate those incurred with respect to SMFF's claims.

It must be emphasized, however, that this holding is *not* applicable to fees expended *solely* with respect to PlusFunds. While PlusFunds and SPhinX are largely bringing overlapping claims, it may well be the case that some of PlusFunds' claims are or will be separate. For example and most obviously, PlusFunds' proof of damages — loss of enterprise value, etc. — will differ from SMFF's proof. Expert witnesses may differ on such claims. Notably, the court in *Tecnoclima* denied the claim for attorney fees as to the affiliates because those claims "did not result in the expenditure of additional fees." Id. The clear import of that reasoning is that if the claims had resulted in the expenditure of additional fees, they would have been compensable under the indemnity agreement — because those would be fees expended solely with respect to claims against a third party.

*Accordingly, DPM's counterclaim should be dismissed with prejudice insofar as it seeks legal expenses incurred in this action related to claims brought on behalf of PlusFunds, to the extent those expenses replicate those incurred with respect to SMFF's claims. But the motion to dismiss should be denied insofar as it seeks recovery for DPM's legal expenses that are allocated solely in relation to the dispute between DPM and PlusFunds.*

## VI. DPM's Remaining Claims for Indemnity.

The entire focus of the parties has been on whether DPM can recover legal expenses incurred in this action. But DPM's indemnity claims are not so limited. As stated above, the counterclaim also seeks relief

[1] for legal expenses incurred in the Cayman Islands proceedings and [2] for judgment for damages assessed against it in this action or in the Cayman proceedings.

As the parties are brief on these claims (to say the least) the Special Master will be brief as well.

**A. Claim for Legal Expenses and Judgment for Damages Incurred in the Cayman Islands Proceedings.**

The Cayman Islands liquidation proceeding is not a lawsuit between the parties to the Service Agreement. SMFF is not in a position adverse to DPM and SMFF is not bringing a claim of any kind against DPM; nor is DPM seeking relief from SMFF. See email from Counsel for the JOLs to the Special Master dated 5/29/2012 (Cayman proceeding "is not an adversary proceeding, and it is not an action between the JOLs and DPM, although the JOLs are administering the liquidation of the SPhinX Funds.")

The JOLs have conceded that the indemnity provision in the Service Agreements grants indemnity to DPM for legal expenses in third-party proceedings (other than the claims of PlusFunds in this action). At the very least the JOLs have conceded that there is a question of fact on whether DPM has the right to recover legal expenses in third-party proceeding. The JOLs had to argue that third-party suits were covered in order to get to the "unmistakable clarity" rule, so that attorney fees for defending against SMFF claims were *not* covered.

As stated above, there is some ambiguity as to whether DPM is entitled to attorney fees even for third-party actions, because the indemnity clause that favors SMFF specifically calls for attorney fee recovery and the indemnity clause that favors DPM does not. But because the indemnity provision in DPM's favor is unquestionably broad, and because the unmistakable clarity rule does not apply to indemnifying legal expenses for third-party actions, the Special Master concludes that any ambiguity in whether attorney fees are covered for such actions is a question for the factfinder. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63 (2d Cir. 2008)

***Therefore, the motion to dismiss the claim for legal expenses incurred by DPM in the Cayman Islands proceedings should be denied.***

Finally, if the motion to dismiss the claim for indemnity as to attorney fees expended in the Cayman proceedings should be denied, it follows that the motion to dismiss the claim for indemnification of any award of damages in that proceeding should also be denied — but only if the damage award is not based on a finding of "gross negligence, malfeasance, or wilful misconduct"

as the indemnity provision bars a recovery for such acts.  Service Agreement ¶18.  The indemnity provision clearly covers a judgment for damages in third-party actions and, as stated above, the Cayman proceeding is not an action between contracting parties.[24]

### B. Claim for Indemnification of  Any Judgment for Damages Assessed Against DPM in This Action.

As stated above, by the terms of the indemnity provision, DPM is not to be indemnified for acts "which constitute gross negligence, malfeasance or wilful misconduct." Service Agreement ¶18. The claims remaining in this proceeding against DPM are, with one exception, based on allegations of wilful misconduct. ***Therefore the claim for indemnity for "any judgment of damages" must be dismissed with regard to all the claims that remain that are for fraud and aiding and abetting.***

The only remaining claim that could be within the indemnity provision is Count I, for breach of contract. DPM contends that under the indemnity provision, the parties "effectively agreed to forego claims against one another for breaches of the agreement." Email from Andrew Bunn to the Special Master dated May 28, 2012.

The question is whether the indemnity agreement should be construed to cover a judgment of damages in an action between the contracting parties. If the "unmistakable clarity" rule applies to judgments for liability as well as legal expenses, then DPM cannot recover for the reasons expressed in detail in Part III.  It might seem as if the "unmistakable clarity" rule of construction should not apply to damage awards, as it is grounded in a preference for the American Rule, i.e., that each party pays its own *legal expenses*. The American Rule is not necessarily implicated when the indemnity provision concerns liability for damages. But in fact there a number of cases that apply the unmistakable clarity rule to preclude indemnity for damages in lawsuits between the contracting parties. *See, e.g., Sequa Corp. v. Gelmin*, 851 F.Supp. 106, 111 (S.D.N.Y. 1994) (applying *Hooper Associates* and denying indemnity as the provision did not "unmistakably demonstrat[e] an intent to cover *claims* brought by SCC against defendants . . . This Court, therefore, finds defendants' conclusory allegations, that the Indemnity Agreement covers claims asserted by SCC, to be insufficient to withstand a 12(b)(6) motion to dismiss."); *Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.* 458 F.Supp.2d 178, 188 (S.D.N.Y. 2006) (applying unmistakable clarity rule to deny indemnification for damages in a suit between the contracting parties; construing indemnity provision to apply to claims by third parties).

Moreover, many of the cases that deny recovery of attorney fees under the "unmistakable

---

[24] It is not apparent how a judgment for damages *could* be entered against DPM in the Cayman proceeding, as DPM's sole input into that proceeding appears to be having filed a claim for indemnity. But in the absence of argument from the JOLs on that subject, it would be inappropriate to make a finding, on a motion to dismiss, that DPM faces no possibility of any damages being assessed against it in the Cayman proceedings.

clarity" rule reason more broadly. They conclude that the same rule of construction applied to the same indemnity provision  would necessarily preclude indemnity for damages in suits between the contracting parties as well. *See, e.g.,  Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2nd Cir. 2003) (applying the *Hooper Associates* rule of unmistakable clarity to deny indemnity for attorney fees but also using that rule to construe the indemnity provision to apply *only* to third party claims: "Paragraph 7(a) of the Engagement Letter requires Hollander to indemnify OGSI for any claims, liabilities, or damages resulting from OGSI's services, unless caused by OGSI's gross negligence or willful misconduct. We read this section as referring only to third-party claims against OGSI."); *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 21 (2nd Cir. 1996) (the rule of unmistakable clarity applies to deny attorney fees when the indemnity provision covers third party suits: "The language may easily be read as *limited to* third party actions against BFI by, for example, persons from whom the Agencies demanded money.") (emphasis added);  *PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,* Slip Copy, 2006 WL 3370698, at *1 (2nd Cir.) (denying claim for litigation expenses by applying the unmistakable clarity rule, but stating more broadly that "the language of the agreement does not unmistakably provide for the indemnification of claims between the parties."); *Goshawk Dedicated Ltd. v. Bank of New York*, 2010 WL 1029547, at *9 (S.D.N.Y.) (applying *Hooper Associates* to find that there was no unmistakable intent to indemnify for attorney fees in actions between the contracting parties, but stating the rule more broadly:  "Nevertheless, the potential for third-party claims means that the contractual indemnification provisions cannot definitively be read to refer to non-third-party claims, and thus the parties' intent to indemnify *such claims* is not unmistakably clear.") (emphasis added).

Indeed in  *Hooper Associates* itself the court, while grounding its analysis in a preference for the American Rule, states more broadly that "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.  The promise should not be found unless it can be clearly implied  from the language and purpose of the entire agreement and the surrounding facts and circumstances." 74 N.Y.2d 487, 491-92. More importantly, the court applied its rule of unmistakable clarity by finding that third party suits were contemplated  — and therefore that third-party suits were the *only* suits subject to the indemnity agreement:

> Construing the indemnification clause as pertaining *only* to third-party suits affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect.

Id. at 492. (Emphasis added)

It makes sense that if the rule of unmistakable clarity is to apply to indemnity claims for attorney fees,  it should also apply to indemnity claims for damages awards in actions between contracting parties. DPM is essentially arguing that SMFF gave it a release for any breach of contract claim. Such a concession seems more serious than agreeing to pick up legal costs if you lose. So because case law and policy mandates that the rule of unmistakable clarity applies to indemnification of damage awards in actions between the contracting parties — and for all the reasons expressed in Part III — ***DPM's claim for indemnification of any damage award obtained***

*on behalf of SMFF must be dismissed with prejudice.*

It remains to determine whether DPM has a cognizable claim for indemnity from a damage award in favor of *PlusFunds*. In Count I of the First Amended Complaint, PlusFunds seeks damages for breach of the Service Agreement as either a party to that agreement or as a third-party beneficiary. ¶ 299.[25]   As discussed above, the Special Master has found that DPM's claim for indemnity of attorney fees in defending against PlusFunds claims should be denied to the extent they *replicate* the expenses allotted to SMFF's claims. That same line of thinking does not require dismissal of DPM's claim asserting indemnity for an award of damages in favor of PlusFunds. The JOLs have asserted throughout that PlusFunds' damages are separate and apart from the damages suffered by SMFF. See First Amended Complaint ¶1. There is no problem of overlapping.

Applying the analysis used to review indemnity of attorney fees for defending against claims brought by PlusFunds — see Part IV —   the Special Master finds that DPM's claim for indemnification of a damage award in favor of PlusFunds for breach of contract should not be dismissed. This conclusion is based on the following reasons:

1) PlusFunds is not a contracting party and the case law on "non-third parties" does not mandate that PlusFunds be treated as a contracting party for indemnity purposes;

2) The rule of unmistakable clarity, as applied to the indemnity provision, leads to the conclusion that the agreement covers indemnity for claims of third parties;

3) While there is some ambiguity as to whether the indemnification provision in favor of DPM covers attorney fees, there is no ambiguity about its coverage of payment for damages from any liability for breach of its obligation under the Agreement;

4) any award of damages for PlusFunds would not replicate an award for SMFF and so there is no concern about undermining the principles precluding indemnity between contracting parties in the absence of unmistakable intent; and

5) a finding that the indemnity provision covers a damage award does no harm to the policies supporting the American Rule.

**For all these reasons, DPM's claim for indemnification of any damage award obtained on behalf of PlusFunds should not be dismissed.**

## VII. Conclusion and Recommendation

---

[25] As stated above, DPM has not moved to dismiss Count I.

DPM's counterclaim for indemnity (Count II) should be dismissed with prejudice insofar as it seeks:

1. Legal expenses incurred in this action related to claims brought on behalf of SMFF.

2. Legal expenses incurred this action related to claims brought on behalf of PlusFunds, to the extent those expenses replicate those incurred with respect to SMFF's claims.

3. Indemnification of  any damage award obtained on behalf of  SMFF for breach of the Service Agreement.

4.  Indemnification of any damage award based on a finding that DPM committed an act or acts of gross negligence, malfeasance or wilful misconduct.

In all other respects, the motion to dismiss Count II of the Counterclaim should be denied.


Daniel J. Capra
Special Master

Dated: May 29 , 2012
New York, New York