IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KENNETH M. KRYS, MARGOT MACINNIS, and THE HARBOUR TRUST CO. LTD., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 14-2098 (JBS/AMD) |
| v. | |
| ROBERT AARON, DERIVATIVE PORTFOLIO MANAGEMENT LLC, DPM-MELLON, LLC, DERIVATIVE PORTFOLIO MANAGEMENT, LTD., DPM-MELLON, LTD, and BANK OF NEW YORK MELLON CORPORATION, | **OPINION** |
| Defendants. | |

APPEARANCES:

David J. Molton, Esq.
Andrew S. Dash, Esq.
Mason C. Simpson, Esq.
BROWN RUDNICK LLP
Seven Times Square
New York, N.Y. 10036
     -and-
Leo R. Beus, Esq.
L. Richard Williams, Esq.
Malcolm Loeb, Esq.
Thomas A. Gilson, Esq.
Lee M. Andelin, Esq.
BEUS GILBERT PLLC
701 North 44th Street
Phoenix, A.Z. 85008
     Attorney for Plaintiffs

B. John Pendleton, Jr., Esq.
Andrew O. Bunn, Esq.
Kristin A. Pacio, Esq.
Gina Trimarco, Esq.
DLA PIPER LLP (US)
51 John F. Kennedy Parkway

Short Hills, N.J. 07078
       Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This lengthy multi-district securities litigation generally arises from the complex financial relationships between, and ultimate bankruptcy proceedings of, three entities (and the multitude of affiliates associated with each): PlusFunds Group, Inc. (hereinafter, "PlusFunds"), SPhinX Funds (hereinafter, "SPhinX"), and Refco, Inc. (hereinafter, "Refco")—all entities no longer in operation in the aftermath of Refco's dissolution. The parties presently seek a pretrial determination of whether the law of the Cayman Islands or of New Jersey/New York will apply to the fiduciary duty claims against a former director of SPhinX, namely, Robert Aaron.

As relevant here, in 2002, PlusFunds created SPhinX, a global hedge fund consisting of approximately seventy Cayman Islands funds, as an investment vehicle to track the Standard & Poor's hedge fund index. One of the seventy SPhinX funds, SPhinX Managed Futures Fund (hereinafter, "SMFF"), in turn, maintained brokerage accounts with the onshore and offshore affiliates of Refco, a then-existing financial services and brokerage firm. In connection with such accounts, PlusFunds agreed to sweep any of SMFF's excess cash on deposit with Refco,

2

LLC, the onshore affiliate in New York, to Refco Capital Markets, Ltd, the offshore affiliate in the Cayman Islands.

After the revelation that several of Refco's officers and directors participated in a wide-scale, fraudulent underreporting of corporate liabilities, however, Refco filed for bankruptcy on October 17, 2005.  At that time, Refco held $312 million of SMFF's excess cash in unsegregated accounts, all of which the bankruptcy proceeding placed beyond the reach of PlusFunds or SPhinX, and ultimately caused these entities to file their own bankruptcy proceedings.

In this action, Plaintiffs Kenneth M. Krys and Margot Macinnis, the Joint Official Liquidators of the SPhinX Trust, and The Harbour Trust Co. Ltd., the Trustee of the SPhinX Trust (collectively, "Plaintiffs"), allege in relevant part that one of the former directors of SPhinX, Defendant Robert Aaron (hereinafter, "Mr. Aaron"), facilitated the unauthorized movement of SMFF's excess cash into unsegregated accounts with Refco and failed to take certain corrective steps in the face of Refco's potential insolvency, in breach of his fiduciary duty to SPhinX.[1]

---

[1] Plaintiffs asserted similar claims against the other defendants in this action, Derivatives Portfolio Management, LLC, Derivatives Portfolio Management, Ltd., DPM–Mellon, LLC, and DPM–Mellon, LTD (collectively, "Defendants").

Defendants now move for a determination of the choice of
law applicable to Plaintiffs' fiduciary duty claim against Mr.
Aaron. [Docket Item 571.]

Defendants, for their part, take the position that Cayman
Islands Law must, under the circumstances, apply to the
fiduciary duty claim against Mr. Aaron and to "any claims or
defenses implicating the conduct of the other SPhinX directors,"
because an actual conflict exists between the concepts of
fiduciary duties under Cayman and New Jersey/New York law, and
because the organic documents that governed Mr. Aaron's
directorship, the SPhinX Memorandum and Articles of Association
(hereinafter, the "Articles") and by the SPhinX Group of
Companies Director Services Agreement (hereinafter, the
"Director Services Agreement" or the "Agreement"), uniformly
call for the application of Cayman Islands Law. (Defs.' Br. at
2-10; Defs.' Reply at 2-10.)

Plaintiffs, however, argue that the law of the case
doctrine, arising from earlier proceedings before the
Multidistrict Litigation transferee judge in the Southern
District of New York, requires the application of New York law
and assert, in any event, that Defendants have failed to carry
their burden of demonstrating an actual conflict between the

4

relevant law of the Cayman Islands and that of either New Jersey or New York.[2]  (See Pls.' Opp'n at 2-9.)

The principal issues before the Court are whether the law of the case doctrine compels the application of New York law to Plaintiffs' fiduciary duty claims against Mr. Aaron; whether an actual conflict exists between Cayman and New Jersey law;[3] and whether New Jersey's interest in the fiduciary duty claim suffices to overcome the presumptive application of Cayman law under the internal affairs doctrine.

For the reasons that follow, Defendants' motion to apply Cayman Law to Plaintiffs' breach of fiduciary duty claim against Mr. Aaron will be granted, and Plaintiffs' cross-motion to apply Cayman law in the manner set forth by Plaintiffs' expert will be denied without prejudice.[4]

---

[2] Nevertheless, to the extent the Court concludes that Cayman Law applies, Plaintiffs cross-move for the Court to adopt the recitation of Cayman Law set forth in the declaration and report of Plaintiffs' expert, Timothy Ridley.  (Id. at 11-12.)

[3] The parties put forth inconsistent positions concerning whether Cayman Law should be compared to New York or New Jersey law (see, e.g., Pls.' Opp'n at 1), referring to New York and New Jersey interchangeably, and citing cases under the law of both forums.  Nevertheless, the parties both acknowledge that there are no substantive differences between the duties of a director under New York and New Jersey law (see, e.g., Defs.' Br. at 6 n.4; Pls.' Opp'n at 1), and this Court must apply the law of the forum in which it sits, New Jersey.

[4] The Court conducted an oral argument, by telephone, on the pending motions on May 5, 2015.

## II.   BACKGROUND

### A. Factual and Procedural Background

Because resolution of the pending motion relates inextricably to the procedural posture of this lengthy litigation, the Court will discuss the factual predicate and procedural circumstances of this litigation in unison.  For the purposes of the pending motion, however, the Court need not retrace every facet of the parties' convoluted history.  Rather, the Court must only briefly introduce the relevant background of Mr. Aaron's directorship, in addition to the relevant procedural circumstances giving rise to the pending motion and the arguments advanced by the parties.

### 1. SPhinX Articles of Incorporation, and Director Services Agreement under Cayman Islands Law

In 2002, Mr. Aaron agreed to serve on the Board of Directors of SPhinX and its subportfolios, including SMFF, all entities incorporated under the laws of the Cayman Islands, subject to the terms of various documents.  (See Exs. A, B, & C to Pendleton Dec.)  The Director Services Agreement, in particular, provided the relevant "terms and conditions" under which Mr. Aaron, and his fellow directors, agreed to provide services to the various SPhinX entities.  (See, e.g., Ex. C at 2.)  The Agreement generally required the directors to exercise their "best endeavours" to ensure that their actions complied with the SPhinX Articles, and provided that SPhinX would

6

indemnify the directors "against any or all liabilities (other than any loss or expense resulting from the wil[l]ful neglect, wil[l]ful default, fraud or dishonesty of any of the Directors) by reason of" any contract, act, or thing done by any director on behalf of the SPhinX entities. (Id. at ¶¶ 4-5, 11.)  The Agreement further made clear, on its face, that it would, "in all respects be governed by and construed in accordance with the laws of the Cayman Islands."[5]  (Id. at ¶ 29.)

The Articles, the organic documents that established the SPhinX entities, and that the Agreement expressly incorporated by reference, then consistently defined the law applicable to these entities' existence and operations as "the Companies Law (2004 Revision) of the Cayman Islands as amended and every statutory re-enactment thereof for the time being in force." (Exs. A & B to Pendleton Dec.)  These organic documents further delineated, in greater detail, the authority conferred upon the SPhinX directors, like Mr. Aaron, to oversee the SPhinX funds, and defined, at least in part, the scope of their fiduciary obligations.  (See id.)

Mr. Aaron served in the capacity of director, subject to the Articles and the Director Services Agreement, until 2006, at

---

[5] For that reason, the Court rejects Plaintiffs' position that the Director Services Agreement contained no provision concerning the law governing "the conduct of directors of the corporation."  (Pls.' Opp'n at 11.)

which time SPhinX filed voluntary liquidation proceedings under the insolvency laws of the Cayman Islands on behalf of itself and twenty-two of its affiliates, including SMFF.

### 2. Plaintiffs, the JOLs and the SPhinX Trustee, Commence Litigation against Defendants

Following the dissolution of SPhinX, Plaintiffs filed their initial and Amended state court Complaints in this litigation in early 2008, seeking more than $263 million in monetary damages from Defendants based upon the value of the "cash wrongfully deposited" at Refco, in addition to the "lost business enterprise value" purportedly associated with Defendants' asserted malfeasance.  (Id.)

In addition, Plaintiffs specifically asserted 10 causes of action against one or more of the Defendants, including claims for: (a) breach of the Director Services Agreement; (b) breach of the covenant of good faith and fair dealing imbedded in such Service Agreement; (c) contractual indemnification; (d) intentional breaches of Defendants' alleged fiduciary duties of loyalty, duties of disclosure, and duties to safeguard SPhinX's assets; (e) aiding and abetting the breach of fiduciary duty by certain defendants; (f) intentional interference with a contractual relationship as a result of Defendants' improper placement of cash balances with Refco; (g) fraud/misrepresentation regarding Refco's preservation and

treatment of SPhinX's assets; and (h) violations of the civil
Racketeer Influenced and Corrupt Organizations Act under New
Jersey law, N.J.S.A 2C:41-1, -6.2.  [See Docket Item 1 in Civil
Action No. 08-1902 (JBS/AMD)]

　　　On April 17, 2008, Defendants removed the action to this
Court.  (Id.)  Following removal, the Judicial Panel on Multi-
District Litigation issued an order conditionally transferring
the Action to the Southern District of New York (hereinafter,
the "MDL District Court") "for inclusion in MDL No. 1902," in
light of the fact that it arose from a "factual core" common to
Refco's insolvency proceeding.  [See Docket Item 41 in Civil
Action No. 08-1902 (JBS/AMD).]  This action thereafter
proceeded, among a multitude of others, before the MDL Court.

### 3. The MDL District Court's Decision on Defendants' Motion to Dismiss and the Parties' Cross-Motions for Summary Judgment

　　　In the MDL proceedings, Defendants moved, on November 25,
2008, to dismiss Plaintiffs' Amended Complaint pursuant to
Federal Rules of Civil Procedure 8, 9, and 12(b)(6).  On July
19, 2010, the Special Master, Daniel J. Capra (hereinafter, the
"Special Master"), issued a Report and Recommendation on
Defendants' motions, recommending that various claims be
dismissed on plausibility and particularity grounds.  [See
Docket Item 145.]  As relevant here, the Special Master
addressed the choice of law applicable to Plaintiffs' fiduciary

duty claims, and specifically considered the parties' positions concerning whether New Jersey, New York, or Cayman law should govern the "breach of fiduciary duty analysis." [Id. at 15-16.]

Nevertheless, because the parties had not identified any "actual conflict between New York and New Jersey law with respect to breach of fiduciary duty," nor between "Cayman Islands and New York law" the Special Master concluded, at that preliminary stage, that the law of the MDL District Court forum, New York, should apply. [Id.] Following timely objections, the MDL District Court adopted the Special Master's Report and Recommendation in its entirety on March 30, 2011. See In re Refco Inc. Sec. Litig., 826 F. Supp. 2d 478, 488 (S.D.N.Y. 2011). It appears that the Special Master did not mention the provisions of the Articles or the Director Services Agreement pertaining to the application of Cayman Islands law.

Then, on December 31, 2012, Defendants moved for partial summary judgment in their favor on nearly all of the substantive claims that survived their earlier motions to dismiss. The Special Master subsequently issued a Report and Recommendation on August 7, 2013, recommending that the MDL District Court grant Defendants' motion. [See Docket Item 473.] In considering the entry of summary judgment on Plaintiffs' fiduciary duty claims, the Special Master noted Defendants' position that "Cayman law controls the scope of a fiduciary duty

10

owed by a director to a corporation," but concluded that "at least with regard to the allegations of misconduct in this case, any difference between Cayman and New York law" might prove "irrelevant." [Id. at 10 (emphasis in original).] Nevertheless, the Special Master declined to definitively reach the issue, finding that the lack of "factual support for their allegations of [Mr.] Aaron's knowing misconduct" plagued the viability of their claims, not the potential application of Cayman law.  [Id. at 10-11.]

On December 2, 2013, however, the MDL District Court rejected the Special Master's Recommendation that summary judgment be entered in Defendants' favor on certain claims, choosing instead to deny Defendants' motion for partial summary judgment in its entirety.  In re Refco Inc. Sec. Litig., MDL No. 1902, 2013 WL 6334303 (S.D.N.Y. Dec. 2, 2013).  The MDL District Court did not, however, comment on the law applicable to the fiduciary claims.  Id.

On March 24, 2014, the MDL District Court thereafter transferred this action back to this Court for all further proceedings [Docket Item 505], and this litigation has, accordingly, proceeded before this Court, with a jury trial scheduled to begin on June 22, 2015.

## III. STANDARD OF REVIEW

The Court has diversity jurisdiction under 28 U.S.C. § 1332.  In determining the applicable choice of law, a federal district court sitting in diversity, or on the pendency of a federal claim, applies "the conflicts of law principles of the forum state."  See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941); see also Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429 (3d Cir. 1982).

This Court therefore applies New Jersey's two-part "most significant relationship" test described in the Restatement (Second) of Conflict of Laws (the "Restatement").  Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460-61 (N.J. 2008)).

In the first step, the Court must determine whether an "actual conflict" exists "by examining the substance of the potentially applicable laws" with an eye towards whether a "'distinction'" exists between them.[6]  Id. at 460 (citing Lebegern v. Forman, 471 F.3d 424, 428-30 (3d Cir. 2006) (quoting

---

[6] Federal Rule of Civil Procedure 44.1 further provides that, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Here, both parties have submitted the voluminous reports and declarations of their respective experts, all of which the Court has considered in connection with the pending motions.  Neither side sought to present further testimony of their experts at this time.

Grossman v. Club Med Sales, Inc., 640 A.2d 1194, 1197 (N.J.
Super. Ct. App. Div. 1994))).  However, in the absence of an
actual conflict, or in the presence of only a "false conflict,"
e.g., where the potentially applicable laws would produce the
same result on the particular issue, the Court avoids the choice
of law question entirely and applies New Jersey law.  Lebegern,
471 F.3d at 428; see also Williams v. Stone, 109 F.3d 890, 893
(3d Cir. 1997) (same).

     In the event of an actual conflict, however, the Court
proceeds to the second step and must determine which
jurisdiction possesses the "most significant relationship" or
"strongest connection" to the claim at issue.  Camp Jaycee, 962
A.2d at 460, 467.  Reduced to their essence, the principles for
measuring the significance of each forum's contacts to the
litigation and parties under New Jersey choice-of-law principles
consist of: (1) the interests of interstate comity, (2) the
interests of the parties, (3) the interests underlying the field
of tort law, (4) the interests of judicial administration, and
(5) the competing interests of the states.  Id. at 463.

**IV.  DISCUSSION**

     The determination of the choice of law applicable to
Plaintiffs' fiduciary duty claim against Mr. Aaron turns, as
stated above, upon three issues: whether the law of case
doctrine compels the application of New York law to Plaintiffs'

13

fiduciary claims; whether a material distinction, or actual conflict, exists between New Jersey and Cayman Islands law; and whether New Jersey's relationship with the disputed fiduciary claim, if any, suffices to overcome the presumptive application of Cayman law in accordance with the internal affairs doctrine.

The Court will address each issue in turn.

### A. The MDL District Court's Early Application of New York law in connection with Defendants' Motion to Dismiss Stage Does Not Constitute the Law of the Case

In opposing the application of Cayman Islands law to the fiduciary duty claim asserted against Mr. Aaron, Plaintiffs argue, at the outset, that the Special Master "resolv[ed] the choice of law issue" by applying New York law in connection with his Report and Recommendation on Defendants' motion to dismiss, and assert that his determination "became the law of the case" upon adoption by the MDL District Court.  (Pls.' Opp'n at 3.) The Court, however, finds Plaintiffs' assertion without merit.

Critically, the law of the case doctrine "limits relitigation of an issue" after it has been actually "decided" in an earlier stage of the same litigation.  In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002); see also Arizona v. California, 460 U.S. 605, 618 (1983) ("As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the

14

same case."). In that respect, the doctrine endeavors "'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" In re Pharmacy Benefit Mgrs. Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (quoting Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 (3d Cir. 1994)). As a result, a "disappointed litigant should not be given a second opportunity to litigate a matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances." Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 169 (3d Cir. 1982)

Here, however, neither the Special Master, nor the MDL District Court, actually and fully considered the choice of law issue in the manner required to arguably preclude a subsequent judicial determination. To the contrary, the Special Master determined – in a Report and Recommendation ultimately adopted by the MDL District Court – that New York law governed with respect to a breach of fiduciary duty claim, because Mr. Aaron had "not establish an actual conflict of law between Cayman Islands and New York law." In re Refco Inc. Secs. Litig, 826 F. Supp. 2d at 500-01. In so concluding, however, the MDL District Court did not have the benefit of the Director Services Agreement, the document that governed Mr. Aaron's directorship, and specified the application of Cayman law. See id. (discussing only the Articles). Nor did the MDL District Court

15

have before it the robust and nuanced conflict discussion and expert analysis received by this Court in connection with the pending motion.[7]  Rather, the MDL District Court considered only the fact that Cayman and New York law required identical elements for a claim of breach of fiduciary duty, but does not appear to have been advised of the Director Services Agreement, nor the conflict identified by the parties' expert in the pending submissions.  See id.

Moreover, the MDL District Court's determination occurred prior to any discovery, and based solely upon the allegations of Plaintiffs' Amended Complaint.  In that regard, Courts "have long recognized the distinction between pre-discovery motions, based on an undeveloped record, and post-discovery motions for summary judgment" for purposes of applying the law of the case doctrine.  Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 759 F. Supp. 2d 417, 424 (S.D.N.Y. 2010);[8]

---

[7] Indeed, the parties' choice-of-law experts prepared their expert reports in June and August 2012, over one year after the MDL District Court's March 2011 decision on Defendants' motion to dismiss.  For that reason, the Court rejects counsel for Plaintiffs' position during the May 5, 2015 oral argument that the record relevant to the choice of law issue did not change following the MDL District Court's decision.
[8] On the oral argument record on May 5, 2015, counsel for Plaintiffs argued that these decisions provide no exception, because the application of the law of the case doctrine turns upon a question of law.  The Court, however, finds this position without merit, because even if the application of the law of the case doctrine presents a purely legal question, the choice of law analysis remains a highly factual inquiry.  See In re

Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 97 (2d Cir. 2013) (noting that the law of the case doctrine does not preclude "a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations"), cert. denied, 134 S. Ct. 119 (2013); McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 513 (6th Cir. 2000) (noting that a prior "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery").  Indeed, the law of the case doctrine specifically does not "prevent a court from granting summary judgment where a court previously denied a motion to dismiss using the more liberal standards governing Rule 12 motions."  S.C. v. Deptford Twp. Bd. of Educ., No. 01-5127, 2006 WL 1784591, at *14 (D.N.J. June 23, 2006) (citing Lodato v. Ortiz, 314 F. Supp. 2d 379, 388 n. 5 (D.N.J. 2004)); see also Clalit Health Serv. v. Israel Humanitarian Found., 385 F. Supp. 2d 392, 398 n. 8 (S.D.N.Y. 2005) (finding that a pre-discovery determination on a motion to dismiss did not qualify as the law of the case for purposes of a subsequent summary judgment motion).

---

Samsung DLP Television Class Action Litig., No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (generally describing the factual inquiry often necessary in order to decide choice of law questions).  Moreover, in considering the law of the case doctrine, the weight of authority cited below unambiguously draws a distinction between decisions upon an undeveloped factual record and those following discovery.

That rule proves particularly analogous in this instance, because the factual inquiry necessary for a choice-of-law analysis often proves "'inappropriate or impossible'" at the motion to dismiss stage "'when little or no discovery has taken place.'" Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 700-01 (citation omitted) (collecting cases that have found a choice-of-law analysis premature on a motion to dismiss). Moreover, the Special Master's subsequent Report and Recommendation on Defendants' motion for summary judgment further confirms that the choice of law applicable to Plaintiffs' fiduciary duty claims remained an undecided issue in the MDL proceedings. [See generally Docket Item 473.] Indeed, in connection with that subsequent Report and Recommendation, the Special Master considered the choice of law issue anew, but ultimately declined to definitively address the issue, given the Special Master's view of the paucity of "factual support" for the allegations that Mr. Aaron engaged in "knowing misconduct." [Id. at 11.]

For all of these reasons, the Court finds that the Special Master's conclusion at the pleadings phase constitutes little more than a "preliminary" and "not case-dispositive" finding and, as a result, proves insufficient to set the law of the case requiring application of New York law to the fiduciary claims against Mr. Aaron. Pure Power Boot Camp, Inc., 759 F. Supp. 2d

18

at 424.  Therefore, the Court turns to whether an actual
conflict exists between Cayman Law and the relevant New Jersey
law to be applied by this Court.

**B. An Actual Conflict Exists between Cayman and New Jersey
law**

Despite the parties' lengthy positions concerning whether
any significant, material "'distinction'" exists between the
relevant Cayman Islands and New Jersey law, the parties and
their experts agree that Cayman and New Jersey law are, in a
number of significant respects, substantively similar.

Indeed, the parties agree that the elements of a claim of
breach of fiduciary duty are similar under Cayman and New Jersey
law.  (Compare Pls.' Opp'n at 6, with Defs.' Reply at 5.)  The
parties further agree that the law of the Cayman Islands and
that of New Jersey impose, in essence, identical duties upon
directors to avoid self-dealing and conflicts of interests; to
act with loyalty, fidelity, good faith and honesty; and to
exercise reasonable care, skill, diligence, and independent
judgment.  (Compare Pls.' Opp'n at 8, with Defs.' Reply at 6.)

Indeed, in these respects, Cayman law only differs from New
Jersey law, to the extent New Jersey law defines all of these
directorial obligations as "fiduciary duties;" while, Cayman Law
severs these concepts, by narrowly defining the "'core liability
of the fiduciary'" as being "'single minded loyalty'" and

19

fidelity to the company.  (Expert Report of Anthony Travers
(hereinafter, "Travers Rep.") at ¶ 12 (Defendants' expert); see
also Expert Report of Timothy Ridley (hereinafter, "Ridley
Rep.") at ¶ 45 (setting forth the substantively identical
assertion of Plaintiffs' expert).)  In other words, Cayman law
requires that a fiduciary "act in good faith," "not make a
profit out of his trust," "not place himself in a position where
his duty and interest may conflict," and "not act for his own
benefit or the benefit of a third person without the informed
consent of his principal."  (Travers Rep. at ¶ 12; see also
Ridley Rep. at ¶ 45.)  Under Cayman Law, however, the concept of
"fiduciary duty" does not, unlike New Jersey law, specifically
imbed within its definition the duty to exercise reasonable
care, skill, diligence, and independent judgment.

Nevertheless, Cayman law still imposes a duty of care upon
directors, even if not definitionally encompassed by the concept
of a "fiduciary duty," and specifically requires, as under New
Jersey law, that directors exercise reasonable care and skill in
discharging their obligations towards the relevant corporation.
(Travers Rep. at ¶¶ 12-13; see also Ridley Rep. at ¶ 43; compare
Pls.' Opp'n at 8 (noting that under Cayman Islands law,
"directors owe their corporations not only fiduciary duties but
also duties to exercise reasonable care, skill, diligent and
independent judgment"), with Defs.' Reply at 6 (describing the

20

"distinction made between the duty of care and skill and
fiduciary duty under Cayman law").)   The duties Cayman Islands'
directors owe their corporations are, regardless of terminology,
therefore substantively the very same duties owed by New Jersey
directors to their New Jersey corporations.

Given these similar elements, Plaintiffs insist that
Defendants' dispute boils "down to one of nomenclature," and
submit that Defendants "posit[] a 'false conflict.'"   (Pls.'
Opp'n at 9 (citation omitted).)   Though the duties themselves
may prove substantively identical, what constitutes a breach of
these duties differs in material respects between Cayman and New
Jersey law, a distinction Plaintiffs' counsel (but not their
expert) appear to ignore.

Critically, in evaluating whether a director breached any
one of a director's fiduciary duties under New Jersey law,
namely, the duties of good faith, loyalty, and due care, courts
apply the business judgment rule, a "'powerful presumption'"
that, in making any business decisions, "'the directors of a
corporation acted on an informed basis, in good faith and in the
honest belief" that the action taken furthered the best
interests of the company.   In re Merck & Co. Sec., Derivative &
ERISA Litig., 493 F.3d 393, 402 (3d Cir. 2007) (citations
omitted).   The business judgment rule therefore "shield[s]
internal business decisions from second-guessing by the courts"

and immunizes directors for liability "from actions brought by others" with an interest in the business entity, provided that the directors acted "in good faith" and their decisions were "based on reasonable business knowledge." Green Party v. Hartz Mt. Indus., 752 A.2d 315, 326 (N.J. 2000) (citations omitted). Stated differently, so long as the challenged corporate action rests within "the norm of responsible corporate behavior," New Jersey law shields directors from individual liability for their actions. Seidman v. Clifton Sav. Bank, S.L.A., 14 A.3d 36, 53 (N.J. 2011). Under New Jersey law, a director's liability for breach of fiduciary duty therefore turns, at least in primary part, upon the objective reasonableness of the disputed action. See, e.g., George Leon Family Trust v. Coleman, No. 12-4401, 2014 WL 2889741, at *8 (D.N.J. June 25, 2014) (evaluating the reasonable of the directors' decision, based upon "'all relevant justifications for management's determination, including the seriousness and weight of the plaintiff's allegations'") .

Under Cayman law, by contrast, directors "'must exercise their discretion bona fide in what they — not a court may consider — is in the best interests of the company, and not for any collateral purpose." (Ridley Rep. at ¶ 41.) In other words, directors must act with the honest belief that the challenged action or omission rested in the best interests of the company. (See Ex. A to Pendleton Supplemental Dec. (noting that the

22

relevant question under Cayman law concerns "whether the
director honestly believed that his act or omission was in the
interests of the company).)  The inquiry for a claim of breach
of fiduciary duty under Cayman law is therefore a subjective
one, requiring an evaluation of the director's action based upon
the director's subjective belief, without regard to whether the
corporate action appears reasonable on an objective basis.[9]  (See
Ridley Dec. at ¶¶ 41-43; see also Travers Supplemental Dec. at ¶
5 ("Cayman law considers the director's subjective intent,
regardless of whether it was reasonable, in examining the
director's conduct to determine whether there was a breach of
fiduciary duty.").)

Cayman Islands' courts then turn to objective
reasonableness only in the event that no party produces
"conclusive evidence of the director's belief."[10]  (Ridley Dec.

_____

[9] Mr. Ridley provided the following statement concerning the
Cayman Islands' version of New Jersey's business judgment rule:
"It would be wrong for the court to substitute its opinion for
that of management, or indeed to question the correctness of the
management's decision, on such a question, if bona fide arrived
at."  (Ridley Dec. at ¶ 58 (citation omitted).)
[10] On the oral argument record on May 5, 2015, counsel for
Plaintiffs acknowledged this distinction, but again reiterated
their position that the distinction amounts to a false conflict,
because the inquiry into Mr. Aaron's conduct under Cayman law
would, in Plaintiffs' opinion, ultimately require an analysis of
objective reasonableness, the inquiry compelled at the outset
under New Jersey law.  Nevertheless, as stated above, Cayman law
only considers objective reasonableness as a fallback in the
absence of any conclusive evidence of the relevant director's
subjective belief.  (See Ridley Dec. at ¶ 44 (citation

at ¶ 44 (citation omitted).)  This subjectivity, which the
parties' experts uniformly identify, could prove dispositive,
because Mr. Aaron's subjective belief and intent could, under
Cayman law, preclude him from fiduciary liability, even if the
disputed corporate actions might otherwise appear objectively
unreasonable.  Evidence of the director's subjective good faith
belief may be impeached by evidence that such a belief is not
credible because it is so far beyond the realm of reasonable
conduct that the director could not have believed his action was
a proper exercise of judgment.  New Jersey law, by contrast,
leaves little to no room for inquiry into Mr. Aaron's subjective
belief, and hinges instead upon whether the challenged action
appears objectively reasonable.

      For these reasons, the Court finds that Cayman law
regarding fiduciary liability of a director actually conflicts
with New Jersey law.  It presents a true conflict because the
Defendants posit the application of Cayman law which is more
protective of Defendants' conduct, while Plaintiffs posit

---

omitted).)  At trial, the parties intend to introduce over 1000
exhibits and the testimony of a multitude of fact and expert
witnesses on this and related issues.  Despite Plaintiffs'
position, the Court cannot conclude that an objective inquiry
would inevitably be required, because it remains conceivable
that this voluminous evidence will provide a conclusive and
credible demonstration of Mr. Aaron's subjective belief (indeed,
Defendants take the position that it will).  Moreover, because
Cayman law would, unlike New Jersey law, first assess this
subjectivity, these laws actually conflict.

application of New Jersey law which is more favorable to
Plaintiffs' claim of a director's liability.  Therefore, the
Court will proceed with the choice-of-law analysis, and will
consider which forum bears the most significant interest in
Plaintiffs' fiduciary duty claims against Mr. Aaron

> ### C. An Analysis of the Most Significant Interest Considerations does not Justify Departure from the Presumptive Application of Cayman Law

Prior to reaching the second step of New Jersey's choice-
of-law analysis, the Court notes, at the outset, that the
internal affairs doctrine presumptively governs the Court's
analysis.

The internal affairs doctrine serves as a "conflict of laws
principle which recognizes that only one State should have the
authority to regulate a corporation's internal affairs—matters
peculiar to the relationships among or between the corporation
and its current officers, directors, and shareholders—because
otherwise a corporation could be faced with conflicting
demands." Edgar v. MITE Corp., 457 U.S. 624, 645 (1982).  New
Jersey courts adhere to this doctrine, and direct that "the law
of the state of incorporation [governs] internal corporate
affairs." Fagin v. Gilmartin, 432 F.3d 276, 282 (3d Cir. 2005)
(citation omitted).  As applied here, "anyone controlling" a
Cayman Islands corporation would therefore be presumptively
subject to Cayman Islands law "on fiduciary obligations to the

corporation and other relevant stakeholders." <u>In re Teleglobe</u>
<u>Commc'ns Corp.</u>, 493 F.3d 345, 386 (3d Cir. 2007) (finding
directors of a Delaware corporation "subject to Delaware law on
fiduciary obligations" under the internal affairs doctrine).

Plaintiffs do not dispute that the SPhinX entities existed
under Cayman Law.  (<u>See</u> Pls.' Opp'n at 11 ("The Articles of
SPhinX Ltd. and SMFF indicate that those entities are Cayman
Islands corporations.").)  Nor, as stated above, can Plaintiffs
genuinely dispute that the Director Services Agreement called
for the application of Cayman law to a dispute regarding a
director's conduct.  Therefore, because the disputed claim
concerns alleged acts of a former director in his capacity as a
director of a Cayman corporation, the internal affairs doctrine
presumptively requires the application of Cayman Law.

Nevertheless, because the internal affairs doctrine "'is
not without exception," the Court will proceed in its choice-of-
law analysis to determine whether, despite this presumption, New
Jersey has a more significant relationship to the disputed
corporate actions.  <u>Swift v. Pandey</u>, No. 13-650, 2014 WL
1745040, at *4 n.10 (D.N.J. Apr. 30, 2014) (citation omitted)
(generally noting that the internal affairs doctrine may be
excused in "'unusual cases'"), <u>recons. denied</u>, 2014 WL 3362370
(D.N.J. July 8, 2014).

As stated above, the second step of New Jersey's choice-of-law analysis requires consideration of each forum's contacts to the litigation and parties based upon the: (1) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states.  Camp Jaycee, 962 A.2d at 463.

The Court, however, need not belabor this analysis, because Plaintiffs give these factors no attention, and none prove sufficiently weighty to justify departure from the presumptive application of Cayman law under the internal affairs doctrine.

With respect to the first and third factors, the interest of interstate comity and of the field of tort law, the Court must consider "'whether application of a competing state's law would frustrate'" the policies or the body of law of other interested states.'"  Id. (citation omitted); see also Swift, 2014 WL 1745040, at *6 (generally noting that the first and third factor call for, in essence, the same inquiry).  Here, Plaintiffs have not argued that the application of Cayman Islands law would frustrate the body of law or any policy of New Jersey.  Moreover, given the substantive identity of the duties imposed upon corporate directors under Cayman and New Jersey law, their interests in ensuring that directors faithfully

27

discharge their respective obligations would appear inherently harmonized.

With respect to the second and fourth factors, the interests of the parties and of judicial administration, the Court also need not linger, because the parties' interests play "little or no part in a choice-of-law question in the field of torts." Fu v. Fu, 733 A.2d 1133, 1141 (N.J. 1999) (citation omitted). With respect to issues of "practicality and ease of application," Camp Jaycee, 962 A.2d at 467, the Court must note that the application of Cayman Law presents certain practical difficulties of determining foreign law. Nevertheless, because this action concerns the conduct and behavior of various SPhinX directors, the Court and the parties will necessarily benefit from the application of a single standard. Moreover, any incidental burden remains too insignificant to overcome the application of Cayman Law under the internal affairs doctrine.

Finally, with respect to the fifth factor, the competing interests of the state, the Court must consider the policies "'the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, [must consider] whether those concerns will be furthered by applying that law to the multi-state situation.'" Pfizer, Inc. v. Emp'rs Ins. of Wausau, 712 A.2d 634, 639-40 (N.J. 1998) (citation omitted). Though Mr. Aaron appears to reside in New Jersey, the conduct

28

implicated by Plaintiffs' fiduciary duty claim does not touch New Jersey.[11]  Rather, Plaintiffs' allegations that Mr. Aaron breached his fiduciary duties to SPhinX relate, inextricably, to the internal affairs of the SPhinX entities, and indeed entirely concern the manner in which he discharged his duties as a director of SPhinX.  Moreover, because a breach of fiduciary duty claim does not involve identifiable physical conduct or harm, "'the corporation [generally] sustains an injury in the state of incorporation and wherever it has offices.'"  Swift, 2014 WL 1745040, at *6 (citation omitted).  Here, that place of incorporation is the Cayman Islands, and Plaintiffs have not set forth any specific facts demonstrating a significant connection between the substance of the fiduciary duty claim and New Jersey.  Absent such a showing, the Court cannot find any competing interest of sufficient weight to justify departure from the presumption of the internal affairs doctrine.

For all of these reasons, the Court concludes that the law of the Cayman Islands, the place of the SPhinX entities incorporation, governs Plaintiffs' breach of fiduciary duty claim against Mr. Aaron.

---

[11] On the oral argument record on May 5, 2015, counsel for Plaintiffs argued that Mr. Aaron's decisionmaking as a director most likely occurred in New Jersey.  Nevertheless, counsel for Defendants clarified that none of the segregation decisions giving rise to the disputed fiduciary duty claim occurred in New Jersey, and counsel for Plaintiffs did not challenge that clarification.

## V.    CONCLUSION

For all of these reasons, Defendants' motion will be granted, and the Court will apply Cayman Law to Plaintiffs' claim against Mr. Aaron for breach of fiduciary duty. Plaintiffs' cross-motion will be denied without prejudice.[12]

An accompanying Order will be entered.

May 20, 2015                         s/ Jerome B. Simandle
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge

---

[12] In its cross-motion, Plaintiffs request that the Court adopt the statement of Cayman Law as set forth in the declaration and expert report of Plaintiffs' expert, Timothy Ridley. (Pls.' Opp'n at 11-12.)  Defendants, by contrast, urge the Court to adopt the statement of their expert, Anthony Travers, given the alleged "inaccuracies and misrepresentations of Cayman law in the Ridley materials." (Defs.' Reply at 10 n.4.)  However, on the oral argument record on May 5, 2015, the parties agreed that the precise determination of Cayman law could be deferred. Nevertheless, the Court notes that the experts substantively agree on numerous aspects of Cayman Law, particularly to the extent likely relevant for purposes of jury instructions. Moreover, given the Court's resolution of the choice of law issue and exposition, supra, of the substantial similarities of the duties of the director under Cayman Islands and New Jersey law and the contours of the subjective belief standard for proving breach of those duties under Cayman law, the Court remains hopeful that the parties can resolve any dispute concerning the scope of Cayman law (as distinct from whether Mr. Aaron's conduct actually violated Cayman law).  Therefore, the Court will deny Plaintiffs' cross-motion without prejudice, and will direct the parties to meet and confer in order to produce a concise statement of applicable Cayman law for purposes of instructing the jury, and to narrow the scope of any dispute ultimately presented to the Court.