```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KENNETH M. KRYS, MARGOT MACINNIS, and THE HARBOUR TRUST CO. LTD., <br><br> Plaintiffs, <br> v. <br><br> ROBERT AARON, DERIVATIVE PORTFOLIO MANAGEMENT LLC, DPM-MELLON, LLC, DERIVATIVE PORTFOLIO MANAGEMENT, LTD., DPM-MELLON, LTD, and BANK OF NEW YORK MELLON CORPORATION, <br><br> Defendants. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 14-2098 (JBS/AMD) <br><br><br> **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this lengthy multi-district securities litigation scheduled for trial on June 22, 2015, Plaintiffs Kenneth M. Krys, Margot Macinnis, and The Harbour Trust Co. Ltd. (collectively, "Plaintiffs") move to amend [Docket Item 625] the 308 page Joint Final Pretrial Order entered in this action on November 21, 2014.

Plaintiffs seek, in particular, to augment their exhibit list with an additional 78[1] trial exhibits, to specifically state

---

[1] Of these exhibits, Defendants consent to the addition of 21 exhibits. (See Defs.' Opp'n at 18; Exs. E & F to Molton Dec.) , Plaintiffs' motion will therefore be granted with respect to these agreed-upon exhibits. (See Ex. F to Molton Dec. (setting forth a table of the agreed-upon exhibits).) As a result, only 57 exhibits remain disputed in connection with the pending motion.

a third-party beneficiary claim, and to designate Plaintiff Kenneth M. Krys as a fact and expert witness, rather than solely a fact witness. (See Pls.' Br. at 13-20; Pls.' Reply at 1-10.)

In support of their request, Plaintiffs argue that amendment would result in no prejudice, much less incurable prejudice, to Defendants, because none of the proposed additions address "new legal or factual theories," nor did their initial omission result from any intentional or willful conduct. (Pls.' Br. at 13-20; see also Pls.' Reply at 1-11.) Rather, Plaintiffs take the position that the denial of their proposed amendments would prove manifestly unjust to them, because the proposed amendments concern critical evidence and claims in support of Plaintiffs' overall case. (See Pls.' Br. at 13-20.)

Defendants counter, however, that the proposed amendments must be rejected, as a result of Plaintiffs' failure to demonstrate manifest injustice in the absence of amendment. (Defs.' Opp'n at 11 (citations omitted).) Defendants further argue that any amendment would prejudice their preparedness for the June 22, 2015 trial date, and would potentially require the filing of additional *in limine* and/or Daubert motions. (See id. at 13.)

For the reasons that follow, Plaintiffs' motion will be granted in part and denied in part. The Court finds as follows:

1.     Following the filing of Plaintiffs' initial and amended state court complaints in early 2008, Defendants removed this action to this federal Court on April 17, 2008. [See Docket Item 41 in Civil Action No. 08-1902 (JBS/AMD).]  Shortly thereafter, however, the Judicial Panel on Multi-District Litigation transferred this action to the Southern District of New York (hereinafter, the "MDL District Court") for inclusion in MDL No. 1902.  [See Docket Item 41 in Civil Action No. 08-1902 (JBS/AMD).]  Following seven years of litigation before the MDL District Court, the exchange of tens of thousands of documents (if not substantially more), and the completion of hundreds of depositions, the MDL District Court transferred this action back to this Court for all further proceedings on March 24, 2014. [See Docket Item 505.]

2.     Immediately upon remand, this Court entered an Order directing the parties to submit "a joint status report setting forth the remaining issues in this action, as well as proposed deadlines for preparing the Joint Final Pretrial Order." [Docket Item 520.]  In response, the parties submitted competing proposals, with Defendants proposing that the joint final pretrial order be due no earlier than December 2014, and with Plaintiffs requesting that the joint final pretrial order be due no later than August 2014.  [See Docket Item 521.]  As relevant here, Plaintiffs further argued that any additional time would

3

be unnecessary, because the "parties have had several years to start preparing for trial," and given that time, have "presumably identified the key documents" and witnesses for purposes of trial.[2]  [Id. at 5.]  Nevertheless, on August 14, 2014, the Court directed Plaintiffs and Defendants to complete their portions of the proposed pretrial order by no later than September 15, 2014 and October 14, 2014, respectively, and required the parties' joint proposed pretrial order to be submitted to the Court by no later than October 31, 2014.  [See Docket Item 530.]

    3.    As a result, counsel for Plaintiffs met with the paralegal tasked with the preparation of Plaintiffs' exhibit list, Wendy Wise, in early September for the purposes of eliminating any irrelevant documents.  (See Andelin Dec. at ¶ 8-9; Weis Dec. at ¶¶ 8-12.)  Following certain deletions, counsel for Plaintiffs incorporated the draft exhibit list into Plaintiffs' portion of the proposed pretrial order, and sent the draft, in its entirety, to Defendants. (See Andelin Dec. at ¶ 10; Wise Dec. at ¶ 12.)  Defendants served their portion of the pretrial order on October 21, 2014 (see Ex. 2 to Pendleton Dec.) and the parties proceeded to discuss, on numerous occasions, certain modifications, deletions, and additions to the proposed

---

[2] Indeed, Plaintiffs, for their part, appear to have begun the preparation of their witness and exhibit lists as of "no later than" April 2014.  (Weis Dec. at ¶ 8.)

pretrial order prior to its submission to the Court. (See, e.g., Exs. 2, 3, & 4 to Pendleton Dec.) Follow submission, counsel then acknowledged and affirmed their approval of the Joint Final Pretrial Order (hereinafter, the "JFPTO") at the final pretrial conference (see Ex. 1 to Pendleton Dec.), and the Court entered it on November 21, 2014. [See generally Docket Item 545.]

4. The JFPTO itself, a document that spans 308 pages, underscores the complexity of this litigation and the sheer volume of information amassed by the parties. [See generally id.] As relevant here, the JFPTO specifically reflects the striking number of proposed witnesses and exhibits, including:

|  | Fact Witnesses | Expert Witnesses | Trial Exhibits |
|---|---|---|---|
| **Plaintiffs** | 23 | 5 | 189 |
| **Defendants** | 30 | 4 | 1022 |

[See id. at 100-207.] As a result, the parties have prepared for trial based upon the contents of the already expansive JFPTO, and have filed and responded to 7 motions to exclude expert testimony, and 27 motions *in limine*.

5. Nevertheless, on March 25, 2015, counsel for Plaintiffs provided counsel for Defendants with a revised exhibit list, which included "a number of new exhibits" that counsel had identified in preparing for trial. (Ex. A to Molton

5

Dec.) The revised exhibit list sought, in particular, to increase Plaintiffs' proposed trial exhibits from 189 to 359 exhibits. (See generally id.) The following day, counsel for Plaintiffs then provided "a couple of additional points" concerning the JFPTO, and specifically stated their intention (1) to call Plaintiff Kenneth Krys as an expert witness and (2) to rely upon a third-party beneficiary theory. (Ex. L to Molton Dec.) On March 20, 2015, Defendants objected to Plaintiffs' attempt to "*double* their trial exhibit list," to characterize Mr. Krys as an expert witness (in addition to a fact witness), and to raise a third-party beneficiary theory at trial. (Ex. B to Molton Dec. (emphasis in original).)

  6. In light of Defendants' objections, Plaintiffs reduced the number of additional exhibits to 88 (all while maintaining their position concerning Mr. Krys and the third-party beneficiary theory), and broke down the proposed revisions to their exhibit list into four categories (with some bearing multiple classifications), namely, (1) documents referred to in Plaintiffs' experts' reports; (2) documents allegedly left off of Plaintiffs' exhibit list due to inadvertence; (3) newly identified exhibits; and (4) statutes, regulations, rules, accounting standards, and similar sources. (See Exs. C, D, J to Molton Dec.; see also Pls.' Br. at 2.) In addition, Plaintiffs produced various declarations, which attributed the omitted

6

exhibits to the fact that Ms. Wise suffered an undisclosed, yet significant, health condition during the time in which she drafted Plaintiffs' incomplete exhibit list (see Wise Dec. at ¶¶ 10-17), and explained that counsel's failure to closely supervise Ms. Wise's efforts resulted from her preparation of "countless exhibit lists" without issue for over a decade. (Andelin Dec. at ¶¶ 16-18.) Despite the reduction and explanation, Defendants did not, however, agree without reservation to all of Plaintiffs' proposed additions (see Ex. E to Molton Dec.), and the pending motion followed.

7. A final "'pretrial order when entered limits the issues for trial and in substance'" supersedes the pleadings "'covered by the pretrial order.'" DiNennon v. Lucky Fin Water Sports, LLC, 837 F. Supp. 2d 419, 423 (D.N.J. 2011) (quoting Basista v. Weir, 340 F.2d 74, 85 (3d Cir. 1965)). Failure to raise any "'claims, issues, defenses, or theories of damages'" therefore generally results in waiver, "'even if they appeared in the complaint.'" Bornstein v. Cnty. Of Monmouth, No. 11-5336, 2015 WL 2125701, at *8 (D.N.J. May 6, 2015) (quoting Wilson v. Muckala, 303 F.3d 1207, 1216 (10th Cir. 2002)).

8. Federal Rule of Civil Procedure 16(e) provides that a final pretrial order may be modified in order to prevent "manifest injustice." FED. R. CIV. P. 16(e). The existence of manifest injustice, in turns, requires inquiry into the

7

following factors: (1) the prejudice or surprise to the nonmoving party; (2) the ability of the nonmoving party to cure the prejudice; (3) the extent to which amendment would disrupt the orderly and efficient trial of the case; (4) whether the proposed amendment results from any bad faith or willfulness; (5) the ability of the movant to have discovered the witnesses, evidence, claims or defenses earlier; (6) the validity of the excused offered by the dilatory party; (7) the relative importance of the additional evidence; and (8) whether the decision to amend amounts to a matter of new strategy or tactic. See, e.g., Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227, 1236 (3d Cir. 1994) (citing Beissel v. Pittsburgh & Lake Erie R. Co., 801 F.2d 143, 150 (3d Cir. 1986), cert. denied, 479 U.S. 1088 (1987)); Scopia Mortg. Corp. v. Greentree Mortg., Co., L.P., 184 F.R.D. 526, 528 (D.N.J. 1998) (citations omitted).

9. Applying these factors, the decision of whether to permit amendment to a joint pretrial order ultimately rests within the court's discretion. See, e.g., Joy Mfg. Co. v. Sola Basic Indus., Inc., 697 F.2d 104, 109 (3d Cir. 1982) (citations omitted); Analytical Measurements, Inc. v. The Keuffel & Essex Co., 843 F. Supp. 920, 926 n. 4 (D.N.J. 1993) (citations omitted).

10. Here, Plaintiffs seek, as stated above, to amend the final pretrial order in three primary respects. (See generally Pls.' Br.; Pls.' Reply.)  The Court will address each in turn.

11. Plaintiffs first request to amend their exhibit list in order to include 57 additional exhibits.[3]  (See generally Pls.' Reply at 4.)  With respect to those 27 exhibits that constitute documents referred to in Plaintiffs' experts' reports and inadvertently omitted from Plaintiffs' exhibit list purportedly as a result of a well-documented health condition, the Court finds amendment warranted.  (See Ex. G to Molton Dec.) Indeed, given the fact that Plaintiffs' experts disclosed their reliance upon these documents (in reports otherwise reflected in the JFPTO), Defendants cannot claim any significant surprise from Plaintiffs' intention to rely upon them at trial.  Nor can the information relied upon by known experts fairly be construed as new factual evidence.  Plaintiffs have further provided a valid and legitimate explanation for these documents' initial omission (see generally Wise Dec.), thereby diminishing any conceivable inference that these additions resulted from bad faith or tactical maneuvering.  Finally, even if amendment in this respect results in some incidental prejudice, Defendants still have the opportunity to voice their objections during the

---

[3] Defendants, as stated above, consented to amendment with respect to 21 of the initial 78 exhibits.

course of trial. For these reasons, the Court will grant Plaintiffs' motion as to these 27 documents,[4] without prejudice to Defendants' right to object to their admission in the event Plaintiffs do indeed attempt to introduce them.[5] See Lentz v. Mason, 32 F. Supp. 2d 733, 738 (D.N.J. 1999) (finding "little surprise" and no indication of prejudice, and therefore permitting the defendants to add 22 new exhibits to the joint final pretrial order). Therefore, the Court turns to the next category of proposed exhibits.

12. With respect to the 6 exhibits that constitute documents referred to in Plaintiffs' experts' reports and that are essentially secondary sources, including various sections of Financial Accounting Standards and visual depictions of CFTC and SEC regulations, the Court similarly finds amendment warranted. (See Ex. G to Molton Dec.) Indeed, because this case concerns, in essence, financial mismanagement, Plaintiffs' proposed reliance upon well-known financial and accounting standards hardly comes as any surprise. Even more, Plaintiffs' experts' reports placed Defendants on notice of these documents potential

---

[4] These documents specifically include P-191, P-192, P-197, P-207, P-212, P-217, P-224, P-225, P-226, P-227, P-244, P-258, P-261, P-274, P-287, P-288, P-289, P-295, P-297, P-300, P-310, P-347, P-348, P-357, P-358, P-359, P-360. (See Ex. G to Molton Dec.)

[5] The Court recognizes the strong likelihood that the parties will never seek the admission of at least some, if not many, of their exhibits (both those presently identified and those sought for inclusion).

10

and/or intended inclusion and their usage will, in all likelihood, be limited to the examination of the experts themselves if the hearsay exception for learned treatises in Fed. R. Evid. 803(18) is complied with. For these reasons, the Court will also grant Plaintiffs' motion as to these 6 documents,[6] again without prejudice to Defendants' right to object to their admission in the event Plaintiffs do indeed attempt to introduce them. Therefore, the Court turns to the final category of proposed exhibits.

13. With respect to the 25 documents designated as _only_ inadvertently omitted, or inadvertently omitted _and_ new, however, the Court cannot find the absence of any surprise to Defendants. (See Ex. G to Molton Dec.) Nor can the Court find that their admission would result in no or only minimal prejudice.[7] Indeed, many of these documents concern specific exchanges (by email, fax, and otherwise) between entities and/or parties to this litigation and their late inclusion within the JFPTO may therefore require—and indeed likely will require—Defendants to thoroughly review these additional exhibits, to

---

[6] These documents specifically include P-322, P-333, P-334, P-337, P-339, P-340. (See Ex. G to Molton Dec.)
[7] The already large number of exhibits does not diminish any potential prejudice. (See Pls.' Reply at 4.) Rather, the relevant inquiry concerns whether the proposed additions result in prejudice and/or surprise of an incurable variety. Here, the Court finds that these factors weigh too strongly in Defendants' favor to permit amendment.

11

re-prepare witnesses, and to perform an array of attendant tasks. In that respect, the admission of these documents will disrupt the orderly and efficient trial of this action, on the eve of trial and six months after preparation and entry of the JFPTO, by invariably resulting in requests for significant adjournments of the trial date and possibly even a request for some limited discovery.[8] The cumulative effect of Plaintiffs' belated amendments, including those permitted above, renders this aspect unreasonable given the time constraints. For these reasons, Plaintiffs' motion will be denied with respect to these 25 exhibits.[9]

    14. Plaintiffs next request leave to amend the JFPTO in order to include the third-party beneficiary theory pleaded in Plaintiffs' Complaint at the outset of this litigation. (See,

---

[8] This proves particularly true with respect to the two entirely new exhibits: two articles dated April 14, 2015 (produced more than 5 months after entry of the JFPTO). (See Ex. G to Molton Dec.) These articles concern, in particular, a penalty imposed against Defendant the Bank of New York Mellon and arising out of an unrelated incident concerning the custody of client assets. (See Ex. J to Molton Dec. (setting forth the two articles).) This action has been pending for over 7 years. As a result, these articles do not constitute important or critical evidence to Plaintiffs' case, particularly because they concern a financial penalty that arose from conduct more recent than (and unconnected to) that alleged in this instance and because the penalty was assessed under an authority not implicated here. (See id.)

[9] These documents specifically include P-199, P-200, P-213, P-222, P-264, P-271, P-272, P-281, P-318, P-320, P-329, P-330, P-341, P-342, P-343, P-344, P-350, P-351, P-353, P-354, P-356, P-361, P-362, P-363. (See Ex. G to Molton Dec.)

12

e.g., Pls.' Br. at 16-18; Pls.' Reply at 7-10.) In opposing Plaintiffs' proposed amendment in this respect, Defendants argue that Plaintiffs' failure to preserve the claim in the JFPTO waived their right to pursue it at trial, and that the proposed addition would in any event prejudice Defendants' pending *in limine* motion.[10] (Defs.' Opp'n at 16-17.) After consideration of these arguments, the Court will, for the reasons that follow, permit the amendment.

15. In that respect, the Court notes, at the outset, that it is "'established law'" that claims or defenses set forth in the pleadings, but omitted from the final pretrial order, may be deemed abandoned. Metal Processing, Inc. v. Humm, 56 F. Supp. 2d 455, 471 (D.N.J. 1999) (quoting Basista, 340 F.2d at 84; citing Kline v. S.M. Flickinger Co., 314 F.2d 464, 467 (3d Cir. 1964)). Nevertheless, Rule 16(e)'s prohibition against amendment absent manifest injustice aims "'to insure the efficient resolution of cases and, most importantly, [to] minimize prejudicial surprise.'" Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 684 (3d Cir. 2003) (quoting

---

[10] Moreover, because inclusion of this claim would purportedly prove "futile," Defendants argue that "there can be no manifest injustice" to Plaintiffs. (Defs.' Opp'n at 16.) Without passing judgment on the ultimate merit of Defendants' position, the Court finds that Defendants have not demonstrated that the claim would be so plainly futile as to disrupt the orderly and efficient trial of this action. See Joy Mfg. Co., 697 F.2d at 109.

13

Lamborn v. Dittmer, 873 F.2d 522, 527 (2d Cir. 1989)). It does not, however, serve "'as an inflexible straightjacket on the conduct of litigation.'" Id. (citation omitted); see also Brooks v. Wootton, 355 F.2d 177, 178 (2d Cir. 1966) (citation omitted) (noting that "'an unswerving insistence upon every provision of a pretrial order'" may, by itself, "'cause injustice'").

16. Here, Defendants do not claim that Plaintiffs' proposed addition seeks to interject a new theory upon which discovery must be taken, nor that the pursuit of this claim at all changes the complexion of this litigation. (See generally Defs.' Opp'n at 16-17.) Even more, Defendants do not claim any lack of familiarity with the Service Agreement that forms the predicate of Plaintiffs' third-party beneficiary theory. To the contrary, Defendants directly address Plaintiffs' third-party beneficiary theory, in addition to certain interpretive issues relative to the Service Agreement, in their statement of disputed legal issues within the JFPTO. (See JFPTO at 291-92.)

17. In that respect, the JFPTO reflects, on its face, Defendants' expectation or at least implicit assumption that the claim remained active in this litigation and intended for inclusion at trial. Indeed, the parties undertook extensive discovery with respect to this claim, presumably in furtherance of that specific purpose. (See, e.g., Pls.' Reply at 7-8.) In

14

that respect, Plaintiffs' third-party beneficiary theory constitutes far more than a claim innocuously included in an initial pleading, yet never pursued through discovery nor otherwise litigated throughout the lengthy proceedings in this action.[11] Therefore, although Plaintiffs' failure to include the claim in the JFPTO "violates the letter of Rule 16(e)," the Court finds that its addition to the JFPTO "does not violate the purpose of the rule," nor does it result in any "'prejudicial surprise.'" Morton Int'l, Inc., 353 F.3d at 685 (citation omitted); see also Morales-Evans v. Admin. Office of the Courts of the State of N.J., 102 F. Supp. 2d 577, 585 (D.N.J. 2000) (permitting amendment whether the plaintiffs pled the additional claim in their complaint and took "extensive discovery" under the presumption that the claims remained active); Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp. 2d 807, 815-16 (D.N.J. 2000) (same), aff'd, 51 F. App'x 76 (3d Cir. 2002).

18. Nor does the amendment's potential impact on Defendants' *in limine* motion compel any different result. (See Defs.' Opp'n at 17 n.8.) Indeed, although the inclusion of the

---

[11] For that reason, the Court finds no basis to conclude that Plaintiffs' omission resulted from strategic maneuvering or bad faith conduct. Rather, the error amounts to attorney inadvertence, which, while troubling in a case of this magnitude, does not warrant denial of Plaintiffs' request absent undue prejudice to Defendants.

15

third-party beneficiary claim may require revision to, or the withdrawal of, Defendants' *in limine* motion concerning the Service Agreement [see Docket Item 599], that fact alone does not constitute prejudice sufficient to preclude Plaintiffs from pursuing their claim, particularly because this amendment will, in all likelihood, prompt Defendants to withdraw their motion, a right always reserved to a party. (See id.) For all of these reasons, Plaintiffs' motion will be granted with respect to the third-party beneficiary claim.

19. Finally, the Court turns to Plaintiffs' request to designate Mr. Krys, an individual already identified as one of Plaintiffs' fact witnesses, as an expert witness. (See, e.g., Pls.' Br. at 19-20; Pls.' Reply at 10-11.) In opposing Plaintiffs' request, Defendants argue that Plaintiffs' late stage designation of Mr. Krys as an expert witness prejudices their interests, because Defendants did not, in reliance upon the JFPTO, "expend resources drafting a Daubert motion as to him." (Defs.' Opp'n at 18.) Nevertheless, the Court need not belabor Defendants' assertions, because the Court finds no prejudice sufficient to deny Plaintiffs' request.

20. Critically, in a letter dated January 30, 2012, counsel for Plaintiffs disclosed their intention to rely upon Mr. Krys as an expert witness on an array of issues, including "the SPhinX Fund," the "liquidating and winding up of the SPhinX

Funds," "[a]ccounting," "[c]ash, cash management, and cash movement," and the "SPhinX Funds' accounts at banks." (See Ex. 5 to Pendleton Dec.) Mr. Krys then issued two expert reports in connection with those topics (see JFPTO at 120), and specifically testified about them during his expert deposition. (See Ex. B to Molton Dec.; Defs.' Opp'n at 16-17; Pls.' Reply at 10.) As a result, it comes as no surprise that the JFPTO reflects both parties' intention to call Mr. Krys to testify with respect to these very topics. (See JFPTO at 100, 108-09.) Nor can Defendants claim any significant surprise in Plaintiffs' proposed reliance upon Mr. Krys for the expert opinions he rendered in his expert reports. Indeed, Defendants specifically objected to Mr. Krys' proposed fact testimony on the ground that it exceeded the limits of lay witness testimony under Federal Rule of Evidence 701 (see id. at 105), and Plaintiffs have reiterated that Mr. Krys' testimony (in whatever capacity) will extend no further than the subject matter disclosed in early 2012, discussed in Mr. Krys' expert reports and at his deposition, and reflected in the JFPTO. (See Ex. L to Molton Dec.)

    21. In that respect, Plaintiffs' omission of Mr. Krys from their list of proposed experts amounts to an error of limited significance, because Mr. Krys' proposed testimony, regardless of its classification, will concern topics long known to, and

17

actively explored by, Defendants. Indeed, Plaintiffs' proposed amendment would appear to do little more than clarify an issue otherwise plainly reflected in the overall JFPTO.[12] Moreover, because the Court will permit Defendants to file a motion to exclude Mr. Krys' expert testimony under Daubert and Federal Rule of Evidence 702, if appropriate, any incidental prejudice resulting from Plaintiffs' amendment will be cured.[13] For these reasons, Plaintiffs' motion will be granted with respect to Mr. Krys. See Fried v. Tetzlaff, No. 11-2578, 2014 WL 2861098, at *8 (D.N.J. June 24, 2014) (citation omitted) (permitting an amendment, where the defendants could claim no "'surprise[]'" by the proposed addition, because it had, in essence, "already been included" in the final pretrial order and relied upon no new "evidentiary basis").

22. An accompanying Order will be entered.

 May 29, 2015                                  s/ Jerome B. Simandle
Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge

---

[12] Moreover, even if Defendants held any doubt concerning the true nature of Ms. Krys' testimony, counsel for Plaintiffs put such doubt to rest as of no later than March 26, 2015 when they specifically clarified their intentions. This clarification came well in advance of the June 22, 2015 trial date, therefore further diminishing any arguable claim of prejudice.

[13] The Court will issue a separate Scheduling Order concerning the briefing schedule of this anticipated motion.