```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KENNETH M. KRYS, MARGOT MACINNIS, and THE HARBOUR TRUST CO. LTD., <br><br> Plaintiffs, <br>   v. <br><br> ROBERT AARON, DERIVATIVE PORTFOLIO MANAGEMENT LLC, DPM-MELLON, LLC, DERIVATIVE PORTFOLIO MANAGEMENT, LTD., DPM-MELLON, LTD, and BANK OF NEW YORK MELLON CORPORATION, <br><br> Defendants. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action <br> No. 14-2098 (JBS/AMD) <br><br><br> **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this lengthy multi-district securities litigation, the parties filed 29 *in limine* motions. By Orders dated May 26, 2015, June 16, 2015, and June 18, 2015 [Docket Items 697, 698, 721, & 725], the Court addressed 26 of the parties' motions. On the oral argument records on June 15, 2015 and June 17, 2015, however, the Court reserved decision with respect to three motions. This Memorandum Opinion addresses those reserved motions, and specifically concerns:

1. Defendants' motion *in limine* to exclude references to whether Defendant Robert Aaron violated the Irish Stock Exchange Rules [see Docket Item 598];
2. Defendants' motion *in limine* to exclude introduction of and references to auditing problems unrelated to SMFF [see Docket Item 603]; and
3. Plaintiffs' motion *in limine* to preclude Defendants from introducing a May 17, 2006 letter from the Northeast

>     Regional Office of the Securities and Exchange Commission to Christopher Sugrue, the Chairman of PlusFunds [see Docket Item 616].

For the reasons that follow, Defendants' motion to exclude references to violations of the Irish Stock Exchange Rules will be granted in part and denied without prejudice in part, and their motion to exclude evidence concerning auditing problems unrelated to SMFF will be granted in its entirety.  Plaintiffs' motion to preclude Defendants from introducing the May 17, 2006 letter will be granted in part and denied without prejudice in part.  The Court finds as follows:[1]

   1.   The Court first address Defendants' motion to exclude references to Defendants' alleged violations of the Irish Stock Exchange listing requirements.  The various SPhinX offering memoranda disclosed, on their face, SPhinX's listing on the Irish Stock Exchange, and instructed, in relevant part, that SPhinX would adhere to the "Listing Requirements and Procedures" of the Irish Stock Exchange for as long as the SPhinX shares remained so listed.  [See Docket Item 675-4 at i, 22 (Offering

---

[1] In connection with the pending motions, the Court presumes familiarity with the factual and legal underpinnings of this lengthy litigation. For a more detailed discussion of the factual predicate and procedural history of this action, the Court refers any interested readers to the Court's prior Opinions: Krys v. Aaron, ___ F. Supp. 3d ____, No. 14-2098, 2015 WL 3660332 (D.N.J. June 12, 2015); Krys, No. 14-2098, 2015 WL 3452324 (D.N.J. May 29, 2015); Krys, ___ F. Supp. 3d ____, No. 14-2098, 2015 WL 2453720 (D.N.J. May 22, 2015); Krys, ___ F. Supp. 3d ____, No. 14-2098, 2015 WL 2412448 (D.N.J. May 20, 2015).

Memorandum dated July 12, 2002); Docket Item 675-5 at i, 22 (Offering Memorandum dated May 2004).]

2. As relevant here, those investments restrictions required that "no more than 20% of the value of the gross assets" of each SPhinX portfolio could "be lent to or invested in the securities of any one issuer" or could "be exposed to the creditworthiness or solvency of any one counterparty." [Docket Item 675-4 at 22; Docket Item 675-5 at 22.] In other words, the Listing Requirements required segregation and imposed an obligation upon SPhinX's directors to confirm and assure that its assets remained segregated. As a result, Mr. Aaron confirmed in a letter dated June 25, 2002 to the Irish Stock Exchange (among other entities) that he had reviewed the Offering Memorandum, the "Continuing Obligations of the Irish Stock Exchange," and that he had "ensure[d] compliance" with these obligations. [Docket Item 675-2 at 1-2.]

3. In moving to exclude any reference to Defendants' alleged violation of the Irish Stock Exchange requirements, Defendants argue that any such reference would interject an irrelevant body of law into this litigation, and would create a danger that references to "'breaches'" or "'violations'" of the Irish Stock Exchange rules might mislead the jury into concluding that Defendants necessarily committed the breaches alleged by Plaintiffs. [Docket Item 598-1 at 2-4.] Plaintiffs,

however, take the position that any reference to these issues would not serve to interject Irish law, but would instead be used as an example of Mr. Aaron's "false representations" concerning "the accuracy of SPhinX financial statements, the protections afforded SPhinX assets administered by DPM, and the compliance with the requirements of the SPhinX Offering Memorandum." [Docket Item 675 at 1-2, 6-7.]

4.  Evidence of Mr. Aaron's representations concerning SPhinX's compliance with segregation requirements have a clear tendency to make a fact of consequence in this action "more or less probable," particularly to the extent that a misrepresentation of fact constitutes an element of Plaintiffs' fraud claim against Mr. Aaron.  FED. R. EVID. 401(a)-(b).  Indeed, Defendants do not challenge the introduction of these representations on relevance grounds.[2]  Rather, Defendants challenge the representations on the grounds that their connection to <u>violations</u> of the Irish Stock Exchange rules may prejudice, confuse, and/or mislead the jury.  [<u>See</u> <u>generally</u>

---

[2] On the oral argument record on June 15, 2015, counsel for Plaintiffs confirmed that Plaintiffs only intend to rely upon the rules of the Irish Stock Exchange, to the extent sections 2.35 and 2.52 of the Listing Requirements required the directors of SPhinX to segregate its assets, and to prevent those assets from being exposed "to the creditworthiness or solvency of any one counterparty (including that counterparty's subsidiaries or affiliates)."  [Docket Item 675-3.]  Plaintiffs, do not, however seek to introduce the remaining 100+ pages of the Listing Requirements.

Docket Item 598.] Despite the relevance, the Court will not ignore that arguments or references to violations or breaches of the rules applicable to SPhinX's listing on the Irish Stock Exchange may confuse the jury's understanding of the violations and/or breaches actually alleged in this litigation. Labeling these requirements as violating Irish law would tend to cause the jury to believe that such a violation is actionable in this case, when there is no cause of action for breach of Irish law. Even more, these references may lead the jury to unfairly presume that Defendants' alleged violations of Irish law necessarily implies that Defendants breached or violates their obligations under the Offering Memorandum, Service Agreement, and applicable law. For these reasons, the Court will not permit Plaintiffs to argue that Defendants' breached and/or violated the rules of the Irish Stock Exchange, because the danger of confusion and unfair prejudice substantially outweigh the probative value of those references. See Fed. R. Evid. 403. The Court will also preclude Plaintiffs from introducing any portion of the Listing Requirements and Procedures of the Irish Stock Exchange other than sections 2.35 and 2.52. The Court will, however, permit Plaintiffs to rely upon these limited sections of the Listing Requirements, in support of their claim that Defendants, and specifically Mr. Aaron, made a misrepresentation of fact concerning the segregation of SMFF's

excess cash.[3] These provisions 2.35 and 2.52 are probative of the materiality of the promise that such funds would be segregated and not exposed to the creditworthiness of the custodian of these funds. The Court will consider a limiting instruction to the jury, if requested by either party, concerning the purposes for which this evidence may be considered by the jury to avoid confusion or undue prejudice.

5. The Court turns to Defendants' motion to exclude the introduction of evidence concerning auditing problems unrelated to SMFF. SPhinX operated a family of 70 investment funds to provide investors with a platform for tracking the Standard & Poor's Hedge Fund Index. (See Joint Final Pretrial Order at 4.) This action, however, only concerns Defendants' alleged breaches of their various fiduciary and contractual auditing and accounting obligations with respect to one of the SPhinX funds, SMFF. (See generally id.) Plaintiffs allege, in particular, that Defendants facilitated the unauthorized movement of SMFF's excess cash into unsegregated accounts with Refco and failed to take certain corrective steps in the face of Refco's potential insolvency. (See generally id.)

---

[3] Defendants argue that Plaintiffs' reliance upon these representations would be cumulative. [See Docket Item 598-1 at 3-4.] The Court does not find this evidence to be cumulative because it is not redundant; it is reinforcing of the parties' understanding of segregation of funds arising from the restrictions in the various SPhinX offering memoranda concerning segregation.

6. As a result, in their motion to exclude evidence of non-SMFF auditing problems, Defendants argue that "documentation and testimony related to accounting and auditing-related breaches with respect to the other SPhinX Funds" should be excluded as irrelevant, prejudicial, and likely to confuse. [Docket Item 603-1 at 1, 8-9.] Plaintiffs, however, take the position that the "intertwined and highly interdependent" structure of SPhinX funds left SMFF necessarily "affected by the accounting and auditing problems" at other SPhinX funds. [Docket Item 688 at 7-8.]

7. The Court notes that the MDL District Court squarely decided this issue over 5 years ago.[4] [See Docket Item 603.] Indeed, in a February 3, 2010 Report and Recommendation on Defendants' motion to dismiss and the "omnibus" issue of standing, the Special Master noted that the segregation of SMFF's excess cash and its protection from any losses at Refco formed the "gravamen" of Plaintiffs' complaint. [Docket Item 720-1 at 17.] The Special Master further noted that, in making these allegations, Plaintiffs referred "to the SPhinX 'family of hedge funds.'" [Id. (citation omitted).] Nevertheless, he concluded that "SMFF – and only SMFF – [] opened the account and deposited the funds at issue with Refco LLC," and therefore

---

[4] Following oral argument on June 15, 2015, counsel for Defendants submitted the MDL District Court's decision by letter dated June 16, 2015. [See Docket Item 720.]

found that "only SMFF" had "the asserted right to segregation from the ills at Refco," not the SPhinX "'family' of hedge funds."[5] [Id. (citation omitted).] For these reasons, the Special Master recommended that the claims brought by the SPhinX funds other than SMFF be dismissed with prejudice for lack of standing. [Id. at 18.] On March 31, 2010, the MDL District Court then adopted the Special Master's Report and Recommendation, and specifically "dismissed with prejudice" all counts that "purport to bring claims on behalf of SPhinX investors and any SPhinX fund other than SPhinX Managed Futures Fund." [Docket Item 720-2 at 2.]

8. That determination remains the law of the case. Plaintiffs do not appear to have challenged that ruling before the MDL District Court, nor have they identified any basis for this Court to depart from the MDL District Court's Order. See In re Pharmacy Benefit Mgrs. Antitrust Litig., 582 F.3d 432, 441 (3d Cir. 2009) (generally noting that "a 'Return to Go' card [should not] be dealt to parties involved in MDL transfers," absent extraordinary circumstances); Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 169 (3d Cir. 1982) ("A disappointed litigant should not be given a second opportunity to litigate a

---

[5] In so finding, the Special Master considered, and specifically rejected, Plaintiffs' position concerning the structure of the SPhinX family of funds, an argument Plaintiffs have reasserted in connection with the pending *in limine* motion. [Compare Docket Item 720-1 at 17, with Docket Item 688 at 6-7.]

8

matter that has been fully considered by a court of coordinate jurisdiction, absent unusual circumstances.").

9. Moreover, because the MDL District Court dismissed claims related to SPhinX funds other than SMFF with prejudice, this Court cannot conclude that accounting and auditing problems unrelated to SMFF have any tendency to make a fact of consequence in this action "more or less probable." FED. R. EVID. 401(a)-(b). In addition, these unrelated accounting and auditing problems may mislead and confuse the jury and unfairly prejudice Defendants, while consuming undue time compared with the probative value, because their introduction might lead the jury to impugn the propriety of Defendants' actions with respect to SMFF as a result of their conduct with respect to other SPhinX funds. Relatedly, the jury might misunderstand the impact of these unrelated problems (or lack thereof) on the SMFF issues actually implicated in this litigation. The Court therefore finds any probative value associated with this evidence outweighed by the danger of unfair prejudice and confusion and undue consumption of time. See FED. R. EVID. 403. Defendants' motion will, accordingly, be granted, and Plaintiffs will be precluded from introducing accounting and auditing problems regarding any SPhinX fund other than SMFF. Plaintiffs, however, remain free to introduce evidence concerning Defendants' alleged accounting and auditing errors in its

administration of SMFF, as those issues remain relevant to the claims in this action.

10. The Court next addresses Plaintiffs' motion to exclude a May 17, 2006 letter from the Assistant Regional Director of the Securities and Exchange Commission (hereinafter, the "SEC"), Dawn M. Blankenship, to Christopher Sugrue, the former Chairman of PlusFunds. [See Docket Item 616.] Following Refco's collapse, the SEC conducted an investigation into PlusFunds. In connection with that investigation, the Northeast Regional Office of the SEC conducted an examination of PlusFunds' "books and records" pursuant to section 204 of the Investment Advisers Act of 1940. [Docket Item 616-2 at 1.] By letter dated May 17, 2006, Ms. Blankenship set forth the information "revealed" during that examination, and specifically discussed issues regarding "Conflicts of Interest," the "Safety of Client Funds," "Personal Trading," and "Internal Disclosures." [Id. at 1-18.] As particularly relevant here, the letter also addressed the sweeps of SMFF's excess cash from segregated accounts at Refco, LLC to unsegregated accounts at Refco Capital Markets, Ltd. [See id. at 9-16.] In doing so, the letter stated that the Regional Office's examination "revealed" that various operations staff of PlusFunds knew that SMFF's excess cash had been swept to unregulated accounts at RCM, and that these individuals failed to disclose that fact to investors. [See id. at 11-12.]

10

11. In moving to exclude the letter, Plaintiffs argue that the substantive contents of the letter amount to inadmissible hearsay, because the informal report followed an "initial" and "partial" investigation, and therefore lacks the finality and trustworthiness required for purposes of Federal Rule of Evidence 803(8). [Docket Item 616-4 at 2-8.] Defendants counter, however, that "the nature of the investigation conducted by the SEC" in connection with the letter, namely, the thorough "review of PlusFunds' books and records and independent witness interviews," meets the threshold requirements for admissibility under Rule 803(8).[6] [Docket Item 672 at 8-10.]

12. Federal Rule of Evidence 803(8) permits the introduction of an otherwise inadmissible "record or statement" of a public agency, if it sets out "factual findings from a legally authorized investigation" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8)(A)(iii), (B).

13. Critically, however, courts routinely exclude preliminary or interim government documents, on the basis that

---

[6] In opposition to Plaintiffs' *in limine* motion, Defendants assert that they "do not intend to rely on all twenty pages of the SEC letter." [Docket Item 672 at 2.] Rather, Defendants only seek to introduce the portion of the letter that concerns the "Safety of Client Assets" and specifically reference SMFF's excess cash.

11

such reports fail to constitute "factual findings" and lack adequate indicia of trustworthiness. See, e.g., Smith v. Isuzu Motors Ltd., 137 F.3d 859, 862 (5th Cir. 1998) ("[I]nterim agency reports or preliminary memoranda do not satisfy Rule 803(8)(C)'s requirements."); Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1140 (5th Cir. 1983) (noting that if administrative report is not final, it "may be considered untrustworthy" under 803(8)(C)); City of New York v. Pullman Inc., 662 F.2d 910, 914 (2d Cir. 1981) (concluding that an interim staff report does not fall under the Rule 803(8) exception); Toole v. McClintock, 999 F.2d 1430, 1434-35 (11th Cir. 1993) excluding FDA report which contained proposed findings and invited public comment and forecasted issuance of final document after more study); Appleby v. Glaxo Wellcome, Inc., No. Civ. 04-0062, 2005 WL 3440440, at *3 (D.N.J. Dec. 13, 2005) (noting that the presumption in Rule 803(8) "typically does not apply to render hearsay admissible where the findings are merely proposed, tentative, or 'second-hand'") (citation omitted).

    14.  Here, the SEC letter states, on its face, that it is based upon the staff's continued "examination" of PlusFunds and does not qualify as "findings" of the SEC.[7] [Docket Item 616-2

---

[7] To the contrary, the Northeast Regional Office carefully couched the statements in its letter as "revelations" based upon staff review, and not as "findings," preliminary or otherwise. [Docket Item 616-2.]

12

at 19.] Rather, the letter served, by its own terms, to bring certain "deficiencies and/or violations of law" to PlusFunds' attention. [Id.] Importantly, the letter solicited PlusFunds' response, and specifically requested that PlusFunds "inform" the Regional Office of any corrective measures that it intended to implement as a result of notations contained within the letter. [Id.] Furthermore, the letter attached a laundry list of the Regional Office's 15 "Outstanding Requests" for documentation from PlusFunds concerning a wide array of information relative to PlusFunds' and SMFF's administration, and their transactions with RCM and other entities. [Docket Item 616-2.]

15. As a result, the letter makes plain that it did not embody the final findings of even the Northeast Regional Office (much less the SEC), but instead presented the tentative impressions of the Regional Office's incomplete and ongoing staff investigation, as to which comments were invited. Indeed, given the volume of the outstanding documentation, the Court must assume that the Regional Office intended to issue an additional letter in order to augment and/or finalize the "revelations" disclosed in its May 17, 2006 letter. It is also significant that, although the letter certainly included broad conclusory language that might prove advantageous to Defendants at trial, the letter expressly declined to make any ultimate findings on the segregation issues implicated in this

litigation. Rather, Ms. Blankenship couched her statements as "revelations" based upon the reviewed documentation, and concluded, in relevant part, that PlusFunds "may not have properly safeguarded investor funds and in doing so, may have violated its fiduciary duty to its client." [Id. at 16.] For these reasons, the Court finds that the letter does not constitute the SEC's "findings" and is not sufficiently trustworthy under Rule 803(8).[8] FED. R. EVID. 803(8); see also In re Cessna 208 Series Aircraft Prods. Liab. Litig., MDL No. 1721 2009 WL 2780223, *3-*4 (D. Kan. Sept. 1, 2009) (finding a preliminary agency report "subject to revision and further review" insufficient to meet the requirements of Rule 803(8)).

---

[8] Abrams v. Van Kampen Funds, Inc., No. 01-7538, 2005 WL 88973 (N.D. Ill. Jan. 13, 2005) compels no different conclusion. In Abrams, the district court considered the admissibility of various letters between the "Midwest Regional Office of the SEC" and the defendant under Rule 803(8). Id. at *18-*19. As noted by Defendants, the Abrams court indeed found such letters admissible under Rule 803(8). In so finding, however, the Abrams court reviewed a cascade of letters between the Midwest Regional Office and the defendant, with the final letters appearing to amount to the Midwest Regional Office's final determinations based upon its lengthy examinations. Id. at *18. Here, however, the Northeast Regional Office appears to have issued only a single letter, in which the Northeast Regional Office acknowledges that the examination remains ongoing and delineates a series of outstanding requests relative to its continued examination into PlusFunds' affairs. [See generally Docket Item 616-2.] This fact alone casts doubt upon the persuasiveness of Abrams in relation to Plaintiffs' pending in limine motion. Beyond this distinguishing feature, however, an unpublished decision from another district does not constitute binding authority on this Court, and the Court does not find Abrams persuasive under the specific circumstances of this action.

14

Plaintiffs' motion will, accordingly, be granted to the extent it seeks to preclude Defendants from introducing the SEC letter under Rule 803(8), but denied without prejudice to the extent it seeks to bar Defendants from introducing the letter for non-hearsay purposes.[9]

16. An accompanying Order will be entered.

 **June 22, 2015**             **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               Chief U.S. District Judge

---

[9] In its opposition, Defendants state that the letter may be used in "numerous ways" that do not implicate hearsay and the exceptions to the rule against hearsay. [Docket Item 672 at 3-4.] These alternative uses include using the letter as: "evidence [of] the fact that the SEC investigated PlusFunds, irrespective of the substantive contents thereof; or as [] extrinsic evidence of a prior inconsistent statements" under Federal Rule of Evidence 613(b). Resolution of these issues, however, would be premature, because "the context of trial" may provide clarify. Ebenhoech v. Koppers Indus., Inc., 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (noting that rulings on motions in limine "should not be made prematurely if the context of trial would provide clarity"); Sperling v. Hoffmann–La Roche, Inc., 924 F. Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait to see how the trial unfolds."). Plaintiffs' motion in this respect will, accordingly, be denied without prejudice to renewal in the event Defendants intend to use the letter for non-hearsay purposes.